## MAURICE F. MARSHALL v. JOSEPH WELWOOD AND MELVILLE GARSIDE.

The owner of a steam boiler, which he has in use on his own property, is not responsible, in the absence of negligence, for the damages done by its bursting.

Suit for damages done to the property of the plaintiff by the bursting of the boiler of a steam engine on the adjoining property of the defendant, Welwood. Garside, the other defendant, had sold this boiler to Welwood, and was experimenting with it at the time of the explosion.

The case came before the court on a motion for a new trial, the verdict having gone for the plaintiff against both defendants.

Argued at February Term, 1876, before BEASLEY, CHIEF JUSTICE, and Justices WOODHULL, VAN SYCKEL, and SCUDDER.

For the motion, *J. B. Vredenburgh.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. The judge, at the trial of this cause, charged, among other matters, that as the evidence incontestibly showed that one of the defendants, Welwood, was the owner of the boiler which caused the damage, he was liable in the action, unless it appeared that the same was not being run by him, or his agent, at the time of the explosion.

The proposition propounded was, that a person is responsible for the immediate consequences of the bursting of a steam boiler, in use by him, irrespective of any question as to negligence or want of skill on his part.

This view of the law is in accordance with the principles maintained, with great learning and force of reasoning, in some of the late English decisions.   In this class the leading case is that of *Fletcher* v. *Rylands, L. R.* 1 *Exch.* 265, which was a suit on account of damage done by water escaping on to the premises of the plaintiff from a reservoir which the defendant had constructed, with due care and skill, on his own land.   The judgment was put on a general ground, for the court said :  " We think the true rule of law is, that the person who, for his own purposes, brings on his lands and collects and keeps there anything likely to do mischief, if it escapes, must keep it in at his peril, and if he does not do so, is *prima facie* answerable for all the damage which is the natural consequence of its escape."   This result was deemed just, and was sought to be vindicated on the theory that it is but reasonable, that a person who has brought something on his own property which was not naturally there, harmless to others, so long as it is confined to his own property, but which he knows to be mischievous if it gets on his neighbor's, should be obliged to make good the damage which ensues, if he does not succeed in confining it to his own property.   This principle would evidently apply to, and rule, the present case ; for water is no more likely to escape from a reservoir and do damage, than steam is from a boiler ;  and, therefore, if he who collects the former force upon his property, and seeks, with care and skill, to keep it there, is answerable for his want of success, so is he who, under similar conditions, endeavors to deal with the latter.   There is nothing unlawful in introducing water into a properly constructed reservoir on a person's own land, nor in raising steam in a boiler of proper quality ; neither act, when performed, is a nuisance *per se ;* and the inquiry consequently is, whether in the doing of such lawful act the party who does it is an insurer against all

flaws in the apparatus employed, no matter how secret, or unascertainable by the use of every reasonable test, such flaws may be. This English adjudication takes the affirmative side of the question, conceding, however, that the subject is not controlled by any express decision, and that it is to be investigated with reference to the general grounds of jurisprudence. I have said the doctrine involved has been learnedly treated, and the decision is of great weight, and yet its reasoning has failed to convince me of the correctness of the result to which it leads, and such result is clearly opposed to the course which judicial opinion has taken in this country. The fallacy in the process of argument by which judgment is reached in this case of *Fletcher* v. *Rylands*, appears to me to consist in this: that the rule mainly applicable to a class of cases which, I think, should be regarded as, in a great degree, exceptional, is amplified and extended into a general, if not universal, principle. The principal instance, upon which reliance is placed, is the well known obligation of the owner of cattle, to prevent them from escaping from his land and doing mischief. The law as to this point is perfectly settled, and has been settled from the earliest times, and is to the effect, that the owner must take charge of his cattle at his peril, and if they evade his custody he is, in some measure, responsible for the consequences. This is the doctrine of the Year Books, but I do not find that it is grounded in any theoretical principle, making a man answerable for his acts or omissions, without regard to his culpability. That in this particular case of escaping cattle so stringent an obligation upon the owner should grow up, was not unnatural. That the beasts of the land-owner should be successfully restrained, was a condition of considerable importance to the unmolested enjoyment of property, and the right to plead that the escape had occurred by inevitable accident, would have seriously impaired, if it did not entirely frustrate, the process of distress damage feasant. Custom has had much to do in giving shape to the law, and what is highly convenient readily runs into usage, and is accepted as a rule. It would but rarely

occur that cattle would escape from a vigilant owner, and in this instance such rare exceptions seem to have passed unnoticed, for there appears to be no example of the point having been presented for judicial consideration; for the conclusion of the liability of the unnegligent owner rests in *dicta*, and not in express decision. But waiving this, there is a consideration which seems to me to show that this obligation which is put upon the owner of errant cattle, should not be taken to be a principle applicable, in a general way, to the use or ownership of property, which is this: that the owner of such cattle is, after all, liable only *sub modo*, for the injury done by them, that is, he is responsible, with regard to tame beasts who have no exceptionally vicious disposition so far as is known, for the grass they eat and such like injuries, but not for the hurt they may inflict on the person of others—a restriction on liability which is hardly consistent with the notion that this class of cases proceeds from a principle so wide as to embrace all persons whose lawful acts produce, without fault in them, and in an indirect manner, ill results which disastrously affect innocent persons. If the principle ruling these cases was so broad as this, conformity to it would require that the person being the cause of the mischief should stand as an indemnifier against the whole of the damage. It appears to me, therefore, that this rule which applies to damage done by straying cattle, was carried beyond its true bounds, when it was appealed to as proof that a person in law is answerable for the natural consequences of his acts, such acts being lawful in themselves, and having been done with proper care and skill.

The only other cases which were referred to in support of the judgment under consideration, were those of a man who was sued for not keeping the wall of his privy in repair to the detriment of his neighbor, being the case of *Tenant* v. *Gölding*, 1 *Salk*. 21, and several actions which it is said had been brought against the owners of some alkali works for damages alleged to have been caused by the chlorine fumes escaping from their works, which works, the case showed,

had been erected upon the best scientific principles. But I am compelled to think that these cases are but a slender basis for the large structure put upon it. The case of *Tenant* v. *Golding* presented merely the question whether a land-owner is bound in favor of his neighbor to keep the wall of his privy in repair, and the court held that he was, and that he was responsible if, for want of such reparation, the filth escaped on the adjoining land. No question was mooted as to his liability in case the privy had been constructed with care and skill with a view to prevent the escape of its contents, and had been kept in a state of repair. Not to repair a receptacle of this kind when it was in want of repairs was, in itself, a *prima facie* case of negligence, and it seems to me that all the court decided was to hold so.

But this consideration is also to be noticed, both with respect to this last case, and that of the injurious fumes from the alkali works, that in truth they stand somewhat by themselves, and having this peculiarity : that the things in their nature partake largely of the character of nuisances. Take the alkali works as an example. Placed in a town, under ordinary circumstances, they would be a nuisance. When the attempt is made by scientific methods to prevent the escape of the fumes, it is an attempt to legalize that which is illegal, and the consequence is, it may well be held that, failing in the attempt, the nuisance remains.

I cannot agree that, from these indications, the broad doctrine is to be drawn that a man in law is an insurer that the acts which he does, such acts being lawful and done with care, shall not injuriously affect others. The decisions cited are not so much examples of legal maxims as of exceptions to such maxims ; for they stand opposed, and in contrast to principles which it seems to me must be considered much more general in their operation and elementary in their nature.

The common rule, quite institutional in its character, is that, in order to sustain an action for a tort, the damage complained of must have come from a wrongful act. Mr. Addi-

Marshall v. Welwood.

son, in his work on Torts, Vol. I, p. 3, very correctly states this rule. · He says: "A man may, however, sustain grievous damage at the hands of another, and yet, if it be the result of inevitable accident, or a lawful act, done in a lawful manner, without any carelessness or negligence, there is no legal injury, and no tort giving rise to an action for damages." Among other examples, he refers to an act of force, done in necessary self-defence, causing injury to an innocent bystander, which he characterizes as *damnum sine injuria*—"for no man does wrong or contracts guilt ·in defending himself against an aggressor." Other instances of a like kind are noted, such as the lawful obstruction of the view from the windows of dwelling-houses; or the turning aside, to the detriment of another, the current of the sea or river, by means of walls or dikes. Many illustrations, of the same bearing, are to be found scattered through the books of reports. Thus, *Dyer* 25 *b*, says: "That if a man have a dog which has killed sheep, the master of the dog, being ignorant of such quality and property of the dog, the master shall not be punished for that killing." This case belongs to a numerous, well known class, where animals which are usually harmless do damage, the decisions being that, under such conditions, the owners of the animals are not responsible. Akin to these in principle, are cases of injuries done to innocent persons by horses in the charge of their owners, becoming ungovernable by reason of unexpected causes; or where a person in a dock was struck by the falling of a bale of cotton which the defendants' servants were lowering, (*Scott* v. *London Dock Co.*, 3 *H. & C.* 596;) or in cases of collision, either on land or sea. *Hammack* v. *White*, 11 *C. B.* (*N. S.*) 588.

It is true that these cases of injury done to personal property, or to persons, are, in the case of *Fletcher* v. *Rylands*, sought to be distinguished from other damages, on the ground that they are done in the course of traffic on the highways, whether by land or sea, which cannot be conducted without exposing those whose persons or property are near it to some inevitable risk. But this explanation is not sufficiently com--

prehensive, for, if a frightened horse should, in his flight, break into an enclosure, no matter how far removed from the highway, the owner would not be answerable for the damage done. Nor is the reason upon which it rests satisfactory, for, if traffic cannot be carried on without some risk, why can it not be said with the same truth, that the other affairs of life, though they be transacted away from the highways, cannot be carried on without some risk; and if such risk is, in the one case, to be borne by innocent persons, why not in the other? Business done upon private property may be a part of traffic as well as that done by the means of the highway, and no reason is perceived why the same favor is not to be extended to it in both situations. But, besides this, the reason thus assigned for the immunity of him who is the unwilling producer of the damage has not been the ground on which the decisions illustrative of the rule have been put; that ground has been that the person sought to be charged had not done any unlawful act. Everywhere, in all the branches of the law, the general principle, that blame must be imputable as a ground of responsibility for damage proceeding from a lawful act, is apparent. A passenger is injured by the breaking of an axle of a public conveyance; the carrier is not liable, unless negligence can be shown. A man's guest is hurt by the falling of a chandelier; a suit will not lie against the host, without proof that he knew, or ought to have known of the existence of the danger. If the steam engine which did the mischief in the present case had been in use in driving a train of cars on a railroad, and had, in that situation, exploded, and had inflicted injuries on travellers or bystanders, it could not have been pretended that such damage was actionable, in the absence of the element of negligence or unskilfulness. By changing the place of the accident to private property, I cannot agree that a different rule obtains.

It seems to me, therefore, that in this case it was necessary to submit the matter, as a question of fact for the jury, whether the occurrence doing the damage complained of, was

the product of pure accident, or the result of want of care or skill on the part of the defendant or his agents.

This view of the subject is taken in the American decisions. A case, in all respects in point, is that of *Losee* v. *Buchanan*, 51 *N. Y.* 476. The facts were essentially the same with those of the principal case. It was an action growing out of the explosion of a steam boiler upon private property, and the ruling was that such action could not be sustained without proof of fault or negligence. In that report the line of cases is so fully set out that it unnecessary here to repeat them.

The rule should be made absolute.