ADLER'S QUALITY BAKERY, INC., *ET ALS.*, PLAINTIFFS-RESPONDENTS, v. GASETERIA, INC., A CORPORATION OF INDIANA, DEFENDANT-APPELLANT AND THIRD-PARTY PLAINTIFF, v. RKO TELERADIO PICTURES, INC., A CORPORATION OF THE STATE OF NEW YORK, AUTHORIZED TO DO BUSINESS IN NEW JERSEY, THIRD-PARTY DEFENDANT-APPELLANT AND FOURTH-PARTY PLAINTIFF-RESPONDENT, v. BONDED GAS & OIL SYSTEM, INC., A CORPORATION, FOURTH-PARTY DEFENDANT-APPELLANT, AND ROSCOE TURNER AERONAUTICAL CORPORATION, A CORPORATION, FOURTH-PARTY DEFENDANT-APPELLANT.

Argued February 8, 1960—Decided March 22, 1960.

56

Messrs. *William Hart* and *Joseph V. Cullum* argued the cause for the defendants-appellants, Gaseteria, Inc., and Bonded Gas & Oil System, Inc. (*Messrs. Thomas F. Doyle* and *Joseph V. Cullum,* of counsel; *Messrs. Townsend & Doyle,* attorneys).

Mr. *Samuel A. Gennett* argued the cause for the plaintiffs-respondents, Adler's Quality Bakery, Inc., *et als.*

*Mr. John Milton, Jr.,* argued the cause for the fourth-party defendant-appellant, Roscoe Turner Aeronautical Corporation (*Messrs. Milton, McNulty & Augelli,* attorneys; *Messrs. John Milton, Jr., John J. Hanlon, Jr.,* and *Allan H. Klinger,* of counsel and on the brief).

*Mr. Willard G. Woelper* argued the cause for the third-party defendant-respondent and fourth-party plaintiff-respondent, RKO Teleradio Pictures, Inc. (*Messrs. Toner, Crowley, Woelper & Vanderbilt,* attorneys; *Messrs. Willard G. Woelper* and *Allan R. Roth,* of counsel; *Mr. Allan R. Roth,* on the brief).

The opinion of the court was delivered by

BURLING, J. This case arises out of a collision of an airplane with a television tower located in North Bergen Township, Hudson County, New Jersey on November 8, 1956. Numerous claims were made by persons living or working in the immediate area of the tower involving real and personal property and incidental pecuniary losses allegedly caused by the precipitation to earth of the debris of the accident. The Superior Court, Law Division, by its order dated August 20, 1957, adopted the following procedure: a complaint was filed by one of the plaintiffs, Adler's Quality Bakery, Inc.; the other parties claiming damages, 25 in number, were to be considered parties plaintiff but were named only in a schedule attached to the complaint, which schedule lists the name and address of each party, the nature of the claim, and the amount of damages sought. The complaint alleges that Gaseteria, Inc., the defendant, was the owner of the airplane involved in the collision, and thus was allegedly absolutely liable under the provisions of *N. J. S. A.* 6:2–7 for the damages sustained by the plaintiffs. In its answer, Gaseteria admits ownership of the airplane in question, and by a supplement to its answer, permitted by an order of the Superior Court, Law Division, dated March 7, 1959, attacks the constitutionality of the

statute on which the plaintiffs' theory of absolute liability is based.

On November 25, 1957 Gaseteria filed a third-party complaint against RKO Teleradio Pictures, Inc., hereinafter referred to as RKO, alleging that the latter was in control and possession, at the time of the collision, of the television tower into which the airplane crashed, and seeking contribution from RKO as a joint tortfeasor responsible for a *pro rata* portion of all damages recovered by plaintiffs against Gaseteria. RKO thereupon filed a fourth-party complaint against Bonded Gas & Oil System, Inc., hereinafter referred to as Bonded, and Roscoe Turner Aeronautical Corporation, hereinafter referred to as Roscoe Turner, seeking contribution against each under the Joint Tortfeasors Contribution Law, *N. J. S.* 2A:53A–1 *et seq.* According to the pleadings of RKO it is alleged that Bonded and Roscoe Turner maintained, managed, operated and controlled the aircraft in question. Service of process was not made personally upon the fourth-party defendants, but rather by serving the summons and complaint on the Secretary of State pursuant to *N. J. S. A.* 6:5–3. Bonded and Gaseteria filed a cross-claim for contribution against RKO. In its answer to the fourth-party complaint, Roscoe Turner offers three separate defenses, all attacking the effectiveness of service of process and denying the jurisdiction of the court.

On February 2, 1959 plaintiffs filed a motion for summary judgment against Gaseteria, together with affidavits in support thereof. By its order filed March 9, 1959, the Superior Court, Law Division, entered a summary judgment against Gaseteria on the issue of liability, holding Gaseteria absolutely liable under the terms of *N. J. S. A.* 6:2–7, and rejecting its constitutional attacks on that statute. From this order, Gaseteria filed an appeal with the Superior Court, Appellate Division.

On July 14, 1959 the Superior Court, Law Division, entered an order disposing of various motions made by the parties. Roscoe Turner moved the court to determine

the effectiveness of the service of process made on it, and to dismiss the fourth-party complaint for failure to state a claim on which relief could be granted. Gaseteria moved for leave to amend its third-party complaint against RKO, primarily to add a count for indemnification. RKO moved the court to dismiss the third-party complaint and the cross-claim for failure to state a claim on which relief could be granted, and further moved to amend its fourth-party complaint to include a count for indemnification in the event that Gaseteria's motion so to amend the third-party complaint was granted. The trial court rejected Roscoe Turner's argument that it was not properly before the court, holding that *N. J. S. A.* 6:5–3 was applicable and that service of process made in accordance with the terms of that statute was sufficient to give the court *in personam* jurisdiction over the party so served. In addition, the trial court granted RKO's motion to dismiss the third-party complaint and cross-claim and granted Roscoe Turner's motion to dismiss the fourth-party complaint. The trial court also denied Gaseteria's motion to amend its third-party complaint to include a count for indemnification, and denied RKO's motion to the same effect.

The Superior Court, Appellate Division, by its order of September 3, 1959, granted leave to appeal to Gaseteria, Bonded, Roscoe Turner, and RKO from those portions of the trial court's order of July 14, 1959 which were adverse to the respective parties. These appeals were consolidated with the appeal made by Gaseteria from the trial court's order of March 7, 1959 granting plaintiffs' motion for summary judgment on the issue of liability. While these appeals were pending in the Superior Court, Appellate Division, and before argument there, we certified them on our own motion.

There are several distinct questions, dealing with the various orders rendered by the trial court, to be considered on this appeal. The first is the order granting summary judgment in favor of plaintiffs and against Gaseteria on

the issue of liability. The second is the dismissal of the third- and fourth-party complaints and cross-claim by Gaseteria and Bonded for failure to state a claim on which relief could be granted. The third is the denial of Gaseteria's and RKO's motion to amend their respective complaints to include a count for indemnification. The fourth is the denial of Roscoe Turner's objections to the jurisdiction of the court based on the allegedly defective service of process.

## I.

The first question to be determined is whether the trial court properly granted plaintiffs' motion for summary judgment against Gaseteria on the issue of liability. *R. R.* 4:58–3 provides, *inter alia*, "A summary judgment or order, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages." Gaseteria attacks the judgment given on several grounds.

*N. J. S. A.* 6:2–7, the statute which was the basis of the trial court's order granting judgment, provides:

"The owner of every aircraft which is operated over the land or waters of this State is absolutely liable for injuries to persons or property on the land or water beneath, caused by ascent, descent, or flight of the aircraft, or the dropping or falling of any object therefrom, whether such owner was negligent or not, unless the injury is caused in whole or in part by the negligence of the person injured, or of the owner or bailee of the property injured. If the aircraft is leased at the time of the injury to person or property, both owner and lessee shall be liable, and they may be sued jointly, or either or both of them may be sued separately. An airman who is not the owner or lessee shall be liable only for the consequences of his own negligence. * * *"

Gaseteria argues that *N. J. S. A.* 6:2–7 is an unconstitutional exercise of the police power which deprives owners of airplanes of their property without due process of law. The argument is that "the imposition of absolute liability upon the aircraft owner by *R. S.* 6:2–7 cannot be sustained

unless the ownership and operation of aircraft be judicially determined to be an ultrahazardous activity as to persons for whose benefit absolute liability is imposed." Gaseteria thereupon cites *Johnson v. Central Aviation Corp.*, 103 *Cal. App.* 2d 102, 229 *P.* 2d 114 (*D. Ct. App.* 1951); *Boyd v. White*, 128 *Cal. App.* 2d 641, 276 *P.* 2d 92 (*D. Ct. App.* 1954); and *Southern California Edison Co. v. Coleman*, 150 *Cal. App.* 2d *Supp.* 829, 310 *P.* 2d 504 (*Super. Ct.* 1957), to support its contention that aviation is no longer considered by the courts to be an ultrahazardous activity. But see *United States v. Praylou*, 208 *F.* 2d 291, 293 (4 *Cir.* 1953), *cert.* denied 347 *U. S.* 934, 74 *S. Ct.* 628, 98 *L. Ed.* 1085 (1954); *Margosian v. United States Airlines, Inc.*, 127 *F. Supp.* 464, 467 (*D. C. E. D. N. Y.* 1955); *Restatement, Torts*, § 520, comment (*d*) (1938).

▮▮▮▮ The fault of this argument, however, lies in its premise. The doctrine that an extraordinary hazard will subject the persons responsible for it to absolute liability was infused upon the ordinary rule of liability for fault by the English case of *Rylands v. Fletcher, L. R.* 3 *H. L.* 330 (1868). See *Morris, Torts*, 240–242 (1953). But see *Marshall v. Welwood*, 38 *N. J. L.* 339, 340–341 (*Sup. Ct.* 1876). Some courts will use the device of the *Rylands v. Fletcher* doctrine to impose liability without fault when the complaint is of injuries arising from activities which may be termed extrahazardous. But that rule is concerned with common-law liability. It in no way applies to legislative acts and is not a limiting factor upon them. The Legislature has not improperly exercised the police power or violated due process merely because it imposes absolute liability on a person causing injuries. *New York Central R. R. v. White*, 243 *U. S.* 188, 37 *S. Ct.* 247, 61 *L. Ed.* 667 (1917); *City of Chicago v. Sturges*, 222 *U. S.* 313, 32 *S. Ct.* 92, 56 *L. Ed.* 215 (1911); *Crowell v. Benson*, 285 *U. S.* 22, 52 *S. Ct.* 285, 76 *L. Ed.* 598 (1932). Rather, when such action has been taken, the question is whether the law is reasonable, not arbitrary or capricious, and whether it bears

a real and substantial relation to the end sought to be attained. *Nebbia v. New York*, 291 *U. S.* 502, 525, 54 *S. Ct.* 505, 78 *L. Ed.* 940 (1934).

 The essential reasonableness of the statutory imposition of absolute liability in question stems, at least, arguably, from the problems of proof of fault encountered by a person damaged by falling aircraft (or falling debris from aircraft) who seeks recovery for those damages. Proof of negligence, for many different reasons, is difficult to obtain in a large number of such cases. *Sweeney, "Is Special Aviation Liability Legislation Essential?"*, 19 *J. Air L. & Com.* 166, 168–170 (1952). Even if such proof is obtainable, the expense involved is frequently very high, and often prohibitive. See *Speiser, "Liability Problems in Airline Crash Cases,"* *Practical Lawyer*, March 1957, *p.* 17. Application of the doctrine of *res ipsa loquitur* is an uncertain means of overcoming these problems. *McLarty, "Res Ipsa Loquitur in Airline Passenger Litigation,"* 37 *Va. L. Rev.* 55, 80 (1951). A practical alternative, therefore, is to place the risk of ground damages caused by aircraft, or at least the risk of recovering from the person responsible for the fault causing such damages, on a person other than the damaged party—such as the owner of the aircraft as was done in the statute in question. See *Prentiss v. National Airlines, Inc.*, 112 *F. Supp.* 306, 310 (*D. C. N. J.* 1953). These considerations, some scholars argue, indicate that the aircraft industry should bear common-law absolute liability. *Restatement, Torts,* § 520, *comment* (*d*) (1938). Both France and Italy, by statute, impose absolute liability on some segment of the aviation industry in favor of the victim of a falling aircraft. *Mankiewicz, "Some Aspects of Civil Law Regarding Nuisance and Damage Caused by Aircraft,"* 25 *J. Air L. & Com.* 44, 49–50 (1958). England has enacted several statutes with the same effect. Civil Aviation Act of 1940, 12 & 13 *Geo.* 6, c. 67, Air Navigation Act of 1920, 10 & 11 *Geo.* 5, c. 80. Concerning the latter, the British Aerial Transport Com-

mittee Report of 1918, recommending the passage of the act, stated:

"Admittedly persons on land are practically powerless to ensure their own safety by precautionary measures against damage caused by the fall of aircraft or of objects carried therein. * * * [A]s far as damages done by aircraft is concerned the deprivation of the landowner of what is almost certainly an existing right of property should be compensated by what will be in effect insurance of himself and his property against such damage. Nor do we think that in practice the expense of insuring himself against third party risks will prove very burdensome to the owner of aircraft." Quoted in *Bogert, "Problems in Aviation Law,"* 6 *Cornell L. Q.* 271, 300 (1921).

The statute to which the Committee referred bears striking resemblance to Section 5 of the Uniform Aeronautics Act (which was enacted in this State and appears as *N. J. S. A.* 6:2-7) and the comments of the Committee are as cogent now as then. Manifestly, to shift the risk of ground damages caused by aircraft from the victim thereof to the better risk bearer is within the legislative power to act in behalf of the general welfare.

The above discussion reveals that the statute in question is a reasonable measure, not arbitrary or capricious, and bears a real and substantial relation to the end sought to be achieved. The statute therefore does not violate Gaseteria's rights under *Art.* I, *Par.* 1 or 20 of *N. J. Const.* 1947, or under the due process clause of the *Fourteenth Amendment* of the *Federal Constitution.* See *Gundaker Central Motors v. Gassert,* 23 *N. J.* 71, 78 (1956).

The second ground of attack on the statute in question is that it contains an unconstitutional classification contrary to the equal protection clause of the *Fourteenth Amendment* to the *Federal Constitution* and contrary to *Art.* I, *Par.* 1 and *Art.* 4, *Sec.* 7, *Pars.* 8 and 9 of *N. J. Const.* 1947. The argument proceeds from those portions of *N. J. S. A.* 6:2-7 which impose absolute liability on the owner or lessee of the aircraft for damages caused by falling aircraft, but impose only liability for fault on the operator

thereof. This distinction, Gaseteria argues, is unreasonable. This argument must fall, however, if there is any reasonable basis supporting the classification made by the Legislature. *Morey v. Doud,* 354 *U. S.* 457, 463, 77 *S. Ct.* 1344, 1 *L. Ed. 2d* 1485 (1957). And, as indicated above, it may be stated that one reason for the statutory scheme is to place the risk of loss, or the risk of ultimate recovery from the person actually at fault, on the better risk bearer, which would be the owner of the aircraft in an overwhelming number of cases. This being a valid legislative purpose, the classification adopted to achieve the purpose is entirely reasonable and must be sustained.

█ The third ground of attack on *N. J. S. A.* 6:2–7 is based on the Commerce Clause of the *Federal Constitution, Art.* I, *Sec.* 8, *Clause* 3. Gaseteria argues that the statute places an unreasonable burden on interstate commerce and hence is invalid at least insofar as it applies to an interstate flight such as the one which resulted in the collision giving rise to the instant litigation. In *Prentiss v. National Airlines, Inc.,* 112 *F. Supp.* 306 (*D. C. N. J.* 1953), an identical objection was raised against *N. J. S. A.* 6:2–7. There the court stated:

"* * * The statutory provisions in question clearly show that:

(1) They do not affect the actual movement of airplanes in interstate commerce.

(2) They do not affect the average airplane, even financially, as would a tax.

(3) They only affect an airplane owner financially on the occurrence of an accident. Such an accident the defendant owners will certainly agree is not the ordinary result of air travel.

(4) The benefit of the statutory provisions does not go to any one who in any wise participates in such air travel, such as passengers, but only to those who are, under ordinary circumstances, entire strangers to air travel, and who are totally without fault themselves.

It is obvious from the above that the effect of the above statutory provisions on interstate commerce is indirect and casual. It is equally obvious that the effect of such statutory provisions on the public welfare has the clearest of reason in its support, and is a rational exercise of the police power. The principle has been settled in a host of cases that if a statute is a proper exercise of the police

power, and has but an indirect effect upon interstate commerce, it is not an invalid interference with interstate commerce." 112 *F. Supp.*, at *page* 314.

We agree with these conclusions, and we hold that the statute in question does not impose an unconstitutional burden on interstate commerce.

██ ██ Gaseteria contends that even should the statute be held constitutional the summary judgment on the issue of liability should not have been granted since the "pleadings, admissions, and moving affidavits did not show palpably the absence of a genuine issue as to any material fact challenged and that plaintiffs were entitled to judgment as a matter of law," inasmuch as plaintiffs "failed to establish that the crash of the aircraft owned by defendant was the proximate cause of the damages allegedly sustained by plaintiffs." We hold, however, that the trial court's action was proper, and that this objection to it must fail. Nowhere is it suggested that any other cause could be responsible for the damages alleged other than general denials contained in Gaseteria's answer. The affidavit submitted by plaintiffs in support of their motion for summary judgment clearly indicates that the losses complained of were a result of the crash of the airplane Gaseteria admits it owned. Of course, the summary judgment was on the issue of "liability" only, and all plaintiffs must nonetheless demonstrate by adequate proof the amount of their losses in fact occasioned by the crash. That these questions remain, however, is no reason to deny plaintiffs summary judgment holding Gaseteria at least primarily liable for all legal damages resulting proximately from the crash, according to the terms of *N. J. S. A.* 6:2–7. That fault, and hence ultimate responsibility, may lie elsewhere than in the "ascent, descent, or flight of the aircraft" does not vitiate the effect of *N. J. S. A.* 6:2–7 as between the damaged party and the owner of the aircraft. Thus the trial court's order granting summary judgment in favor of plaintiffs and against Gaseteria on the issue of liability will be sustained.

## II.

The second problem to be considered is whether the trial court properly dismissed the third-party complaint filed by Gaseteria against RKO for contribution under the Joint Tortfeasors Contribution Law, *N. J. S.* 2A:53A-1, *et seq.*, and RKO's fourth-party complaint for similar relief from Roscoe Turner and Bonded.

*N. J. S.* 2A:53A-1 provides:

"For the purpose of this act the term 'joint tortfeasors' means two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them. A master and servant or principal and agent shall be considered a single tortfeasor."

*N. J. S.* 2A:53A-3 provides:

"Where injury or damage is suffered by any person as a result of the wrongful act, neglect or default of joint tortfeasors, and the person so suffering injury or damage recovers a money judgment or judgments for such injury or damage against one or more of the joint tortfeasors, either in one action or in separate actions, and any one of the joint tortfeasors pays such judgment in whole or in part, he shall be entitled to recover contribution from the other joint tortfeasor or joint tortfeasors for the excess so paid over his pro rata share; but no person shall be entitled to recover contribution under this act from any person entitled to be indemnified by him in respect to the liability for which the contribution is sought."

RKO argues that Gaseteria's infliction of damages on the plaintiffs was not a "wrongful act, neglect or default" as used in *N. J. S.* 2A:53A-3 and thus no contribution under the Joint Tortfeasors Contribution Law can be allowed. For a "wrongful act, neglect or default" to have occurred. it is argued, there must be some fault involved in the act. From this it is concluded that inasmuch as liability under *N. J. S. A.* 6:2-7 is imposed without regard to fault Gaseteria has committed no "wrongful act, neglect or default" and hence cannot recover under the Joint Tortfeasors Contribution Law.

We cannot agree, however, that the phrase "wrongful act" necessarily connotes fault, thus excluding from the benefits of the Contribution Law any party whose liability is based on liability without fault. In *United States v. Praylou*, 208 *F.* 2d 291 (4 *Cir.* 1953) *cert.* denied, 347 *U. S.* 934, 74 *S. Ct.* 628, 98 *L. Ed.* 1085 (1954), a similar problem was presented. In that case, plaintiffs suffered damages as a result of airplane crashes, which planes were owned by the United States and operated by its servants on government business. The damages were to persons and property on the ground, and they occurred in South Carolina, which had enacted a statute identical with *N. J. S. A.* 6:2–7. The plaintiffs sued under the Federal Tort Claims Act, 28 *U. S. C.* §§ 1346(*b*) and 2674, seeking to hold the Government absolutely liable under the terms of the state act. The United States argued that inasmuch as the Federal Tort Claims Act allows recovery only for injuries "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his * * * employment * * *," 28 *U. S. C.* § 1346(*b*), the Government could not be made to answer in damages under a statute imposing liability without fault. Answering this argument, the court said:

"The weakness of the position of the government is that it overlooks the fact that the effect of the South Carolina Statute is to make the infliction of injury or damage by the operation of an airplane of itself a wrongful act giving rise to liability * * *.

It should be noted that the liability asserted here against the government is not one arising out of the mere possession of property, but one created by law for the invasion of personal and property rights. It is clearly within the power of the state to enact legislation imposing such liability, and it is equally clear that any such invasion of rights, whether intentional or not, can be made a wrongful act on the part of the one guilty of the invasion, and is made such by a statute imposing liability therefor. As said in the A. L. I. Restatement of Torts, p. 16, the word 'tortious,' which means wrongful, 'is appropriate to describe not only an act which is intended to cause an invasion of an interest legally protected against intentional invasion, or conduct which is negligent as creating an unreasonable risk of invasion of such an interest, but also con-

duct which is carried on at the risk that the actor shall be subject to liability for harm caused thereby, although no such harm is intended and the harm cannot be prevented by any precautions or care which it is practicable to require." 208 *F. 2d*, at *page* 293.

The same reasoning may be applied here. The "wrongful act" required by the Joint Tortfeasors Contribution Law, *N. J. S.* 2A:53A–3, consists, in this case, of the infliction of injuries "caused by ascent, descent, or flight of the aircraft, or the dropping or falling of any object therefrom * * *." It is clear that the term "wrongful act" includes any action resulting in the imposition of absolute liability under *N. J. S. A.* 6:2–7.

The cases cited by RKO on this question, *Farren v. New Jersey Turnpike Authority*, 31 *N. J. Super.* 356 (*App. Div.* 1954); and *Yearicks v. City of Wildwood*, 23 *N. J. Super.* 379 (*Law Div.* 1952), are not on point. They held that a third party could not seek contribution from the employer of the person seeking damages when the employer would be liable to that person under the Workmen's Compensation Act, *N. J. S. A.* 34:15–1 *et seq.* There is no analogy between that situation and this, however. Contribution there would have had the effect of holding the employer liable to the employee on account of negligence, a result expressly prohibited by the Workmen's Compensation Act. On the other hand, allowing contribution in the manner sought here would have no such effect. For this reason those cases are not persuasive here.

RKO contends, however, that the Joint Tortfeasors Contribution Law requires that the party seeking contribution be liable for the same tort as the party from whom contribution is sought. It is asserted that since plaintiffs could not recover from RKO under *N. J. S. A.* 6:2–7, neither can Gaseteria, whose liability to plaintiffs is predicated on that statute, recover from RKO under the Joint Tortfeasors Contribution Law.

The standard which must be met by a party seeking contribution from another under the Joint Tortfeasors Con-

tribution Law is set out in *Sattelberger v. Telep,* 14 *N. J.* 353, 367 (1954) where it is stated:

"The plaintiff must prove that he and the defendant in contribution are *in aequali jure;* he cannot prevail unless the injured person also had a cause of action for the tortious injury against the defendant called on for contribution."

This requires, however, only that the injured person have a cause of action against both plaintiff and defendant in contribution and that permitting plaintiff in contribution to recover from defendant in contribution would have essentially the same effect as permitting the injured person to recover one-half his damages from both wrongdoers, assuming both are solvent. Failure to meet this standard explains the result in *Kennedy v. Camp,* 14 *N. J.* 390 (1954), where it was held that a party sued by an injured person could not seek contribution from that injured person's spouse, since the effect would be to give the injured spouse a cause of action against the spouse causing injury, which effect was never intended by the Joint Tortfeasors Contribution Law. The same reasoning required the result reached in *Lutz v. Boltz,* 48 *Del.* 197, 100 *A. 2d* 647 (*Super. Ct.* 1953), cited by RKO in its brief, which held that a plaintiff in contribution could not recover from a defendant in contribution for the latter's negligence causing damages to the injured party, when the injured party was prevented from recovering for such injuries from the defendant in contribution, except insofar as they resulted from the latter's willful and wanton recklessness, by the Delaware Automobile Guest Statute. *Farren v. New Jersey Turnpike Authority,* 31 *N. J. Super.* 356 (*App. Div.* 1954), and *Yearicks v. City of Wildwood,* 23 *N. J. Super.* 379 (*Law Div.* 1952), both discussed *supra,* are explainable in the same manner. In *Wilson v. Massagee,* 224 *N. C.* 705, 32 *S. E. 2d* 335, 156 *A. L. R.* 922 (*Sup. Ct.* 1944), plaintiff in contribution, liable to the injured person's administratrix by virtue of the state Death Act, sought contribution from

defendant in error, liable under the Federal Employers' Liability Act, 45 *U. S. C. A.* § 51 *et seq.* The court refused to allow such relief, and the policy dictating this result indicates that that case is distinguishable from the one at hand. Under the Federal Employers' Liability Act, any damages assessed against the defendant are to be reduced by the jury on a comparative negligence basis. As a practical matter, therefore, to allow the railroad in that case to be made a defendant in contribution would deny it the benefits of this provision, since the monetary obligation to the injured person of the plaintiff in contribution is different from that of the defendant in contribution.

The practical problem which RKO seeks to raise by this argument is that if Gaseteria is allowed contribution because of fault found to have been committed by RKO the latter could be made to respond in the amount of half the judgment rendered against Gaseteria which was absolutely liable for all injuries. This means, it is argued, that RKO could be subjected to liability for damages which, as to it, were not foreseeable. The answer to this problem, however, is that RKO cannot be held to be a joint tortfeasor within the meaning of the Joint Tortfeasors Contribution Law unless the damages to the satisfaction of which it contributes are foreseeable to it, since this is a vital element of the fault which must be found to exist if contribution is to be allowed. There is, therefore, no difficulty in allowing a party liable for negligence to be sued as a joint tortfeasor by a party absolutely liable, since the effect is the same as if both parties committed torts of an identical nature. We may note at this point, however, that we are not deciding the question of whether RKO owed no duty to Gaseteria and hence could not be at fault in respect to the collision, thereby precluding the possibility of RKO's being a joint tortfeasor under the Joint Tortfeasors Contribution Law. This question has not been raised at any stage of this litigation and we will not undertake to consider it now.

RKO's final argument regarding the third-party complaint's request for contribution is that to grant such relief would thwart the legislative purpose of *N. J. S. A.* 6:2-7 insofar as that act was intended to render unnecessary any proof that the sole proximate cause of ground injury resulting from falling aircraft or falling debris from aircraft was connected in some manner with the aircraft. This argument, however, is without merit. By its terms, the statute applies only to innocent injured persons who seek to recover for their injuries caused by falling aircraft. It nowhere appears that the Legislature intended to prevent the owner from seeking contribution from any other person whose fault contributed to the injuries suffered by the innocent victim. That the statute requires the injured person to be without fault contributing to the accident indicates that the Legislature was concerned with placing the risk of loss with the party responsible for it. Since the statute is silent as to the liability of third parties, actually at fault, to the owner of the aircraft it is logical to assume that ultimate responsibilities between such parties is to depend on ordinary tort principles, since otherwise the Legislature would have expressly stated the relationships to govern in such situations. There is a fundamental distinction between a person who has suffered damages through no fault of his own and who seeks to shift those damages to another better able to bear them, and a person who has suffered no damages but whose fault could have contributed to or been the sole cause of injuries to others. There is also a fundamental distinction in the proof problems in an action between an injured person seeking to shift the loss to the aircraft owner and an action between the aircraft owner, held absolutely liable by the injured person, seeking to shift part or all of the loss to a third person who must be shown to be at fault. These distinctions indicate that inasmuch as the Legislature spoke expressly only as to the injured party-aircraft owner situation, it intended the aircraft owner-third party situation to be governed by ordinary tort law.

We hold, therefore, that Gaseteria's third-party complaint for contribution against RKO should not have been dismissed for failure to state a cause of action on which relief could be granted. Nor does there appear any reason why RKO should be precluded initially from seeking contribution from Roscoe Turner and Bonded, but the status of this phase of the litigation will be the subject of further discussion, *infra*.

### III.

The third question is whether the trial court's denial of Gaseteria's application for leave to amend its third-party complaint to include a count in indemnity was proper, and also whether the denial of RKO's similar request was correct.

We hold that Gaseteria's application to amend its third-party complaint to include a count in indemnification should be allowed. As we have indicated above, the statute on which Gaseteria's liability to plaintiffs is based was not intended to place definitely as to all parties the issue of fault causing the damages originally complained of. Rather *N. J. S. A.* 6:2–7 settled that issue and placed the risk of loss only as between the injured party and the aircraft owner. We have concluded that the aircraft owner is not precluded by *N. J. S. A.* 6:2–7 from seeking to place the loss on the person responsible for it. In terms of contribution under the Joint Tortfeasors Contribution Law, this means that an aircraft owner liable in damages for losses caused to persons or property on the ground by the fall of his aircraft may, if he is able to prove actual fault in another, recover any amount he has paid to the injured persons over his *pro rata* share. But if the aircraft owner is able to demonstrate that he is free of fault, and that the strict liability imposed by *N. J. S. A.* 6:2–7 is merely an imputed or constructive fault, then a showing of another's sole responsibility for the losses will entitle the aircraft owner to indemnity from the person who actually caused the injuries originally complained of.

In *Restatement, Restitution*, § 96 (1937) it is stated:

"A person who, without personal fault, has become subject to tort liability for the unauthorized and wrongful conduct of another, is entitled to indemnity from the other for expenditures properly made in the discharge of such liability."

This sound rule was amplified in *Builders Supply Co. v. McCabe*, 366 *Pa.* 322, 77 *A.* 2d 368 (*Sup. Ct.* 1951) where the court said:

"The right of *indemnity* rests upon a difference between the primary and secondary liability of two persons each of whom is made responsible by the law to an injured party. It is a right which enures to a person who, without active fault on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable. The difference between primary and secondary liability is not based on a difference in *degrees* of negligence or on any doctrine of *comparative* negligence, * * *. It depends on a difference in the *character* or *kind* of wrongs which cause the injury and in the nature of the legal obligation owed by each of the wrongdoers to the injured person * * *.
 * * * [T]he important point to be noted in all the cases is that secondary as distinguished from primary liability rests upon a fault that is imputed or constructive only, being based on some legal relation between the parties, or arising from some positive rule of common or statutory law or because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one primarily responsible." 77 *A.* 2d, at *pages* 370, 371.

See *Public Service Elec. & Gas Co. v. Waldroup*, 38 *N. J. Super.* 419, 431–432 (*App. Div.* 1955). As was stated in *Daily v. Somberg*, 28 *N. J.* 372, 385 (1958) "* * * [I]ndemnity amongst tortfeasors has generally been confined to those whose negligence 'is not morally culpable but is merely constructive, technical, imputed or vicarious,'" an implied recognition of the rule stated above. It is clearly but an application of this well-established rule to hold that should Gaseteria be able to prove itself or its agents free from any fault contributing to the accident, then it is entitled to indemnity from a person whose fault in fact caused it.

Nor has the statute of limitations run on this claim, a circumstance which would preclude the amendment requested. *Russo v. Wright Aeronautical Corp.,* 1 *N. J.* 417 (1949). The basis for the holding in *Employers Liability Assurance Corp., Ltd. v. Haidt,* 6 *N. J.* 471 (1951), cited by RKO, was that the bank had a cause of action against the person against whom the litigation then pending was brought from the time of the initial wrongdoing, *Id.,* at *page* 474. In the instant case, Gaseteria has no right of indemnity (if any) at least until a judgment for damages has been entered in favor of the injured plaintiffs. Since the cause of action has not even yet arisen, the statute of limitations can hardly have run on it. For the foregoing reasons, therefore, we hold that Gaseteria's application for leave to amend its third-party complaint to include a count in indemnification should have been granted.

We see no basis, however, for allowing RKO's application to amend its fourth-party complaint to include a count in indemnity. If RKO is liable at all, it will be because of a finding that its fault, either alone or in conjunction with other parties, caused the plaintiffs' injuries. And as we pointed out above, such a finding must preclude indemnification among tortfeasors. We reject any rule which would attempt to determine whether the negligence of the party seeking indemnity was active or passive and to rest the granting of indemnity on that determination. The present status of our law with respect to contribution among joint tortfeasors makes such a rule completely unjustified in policy or logic. See *Public Service Elec. & Gas Co. v. Waldroup,* 38 *N. J. Super.* 419, 433–434 (*App. Div.* 1955).

## IV.

The final question deals with the trial court's order striking the first three separate defenses raised by Roscoe Turner to the fourth-party complaint, all of which defenses attack the method of service made upon Roscoe Turner and the jurisdiction of the court over that party.

■ Roscoe Turner argues that substituted service of process upon the Secretary of State in the manner provided by *N. J. S. A.* 6:5–3 is not available in the case of a fourth-party complaint seeking contribution under *N. J. S. 2A*:53A–1 *et seq.*, even though the basis of the claim is an "accident or collision [occurring] on or over the land or waters or in the air space of this State." The plain meaning of the statute, however, contradicts this argument, for the act provides for service in the manner accomplished "in any civil action * * * arising out of or by reason of any accident or collision" as above described.

■ Nor is it sufficient to avoid the service made upon Roscoe Turner that the aircraft involved in this case was licensed pursuant to the laws and regulations of the federal government. True, the statute in question applies only to aircraft "which is not *registered* in this State." *N. J. S. A.* 6:5–3(*b*). (Emphasis supplied) And true it is that *N. J. S. A.* 6:1–35 provides that "any class of aircraft shall be deemed to be *licensed* [according to the requirements of this section] provided, such aircraft shall be validly and effectively licensed and registered under the provisions of the laws, rules and regulations of the United States Government." (Emphasis supplied) But consideration of the purposes of *N. J. S. A.* 6:5–3 suggests that the registration contemplated by that statute is not the same as the licensing contemplated by *N. J. S. A.* 6:1–35. Rather, the registration mentioned in *N. J. S. A.* 6:5–3 most likely is a reference to the possibility that the Legislature might at some time provide for an express written consent to substituted personal service of process upon some designated officer in behalf of the persons otherwise included within the purview of that statute. To interpret the troublesome phraseology in *N. J. S. A.* 6:5–3 in the manner suggested by Roscoe Turner would render the entire statute for the most part meaningless, a situation to be avoided whenever possible.

In its reply brief, Roscoe Turner makes clear that it confines its constitutional objections to *N. J. S. A.* 6 :5–1 *et seq.* to the contention that the statute constitutes an invasion by the State into an area pre-empted by the Federal Government by reason of the Civil Aeronautics Act of 1938, 52 *Stat.* 973, 49 *U. S. C.* § 401 *et seq.,* and by other similar statutes. It is argued that *R. S.* 6 :5–3 imposes conditions upon nonresident aviators in their entry and navigation through the air space above this State, which specifically conflicts with 49 *U. S. C.* § 1304 giving "a public right of freedom of transit in air commerce through the navigable air space of the United States" to any citizen of the United States. This contention, however, is without merit. *N. J. S. A.* 6 :5–3 in no way limits, either expressly or in practical effect, the right granted by 49 *U. S. C.* § 1304. The state statute merely provides as to persons taking advantage of the right of flight over this State, and who in doing so cause injury to others, a method of bringing them personally before the courts of this State to respond in damages for such injuries. The distinction between this and a condition or limitation infringing upon the right of flight or other rights established by the Congress is clear enough to make further discussion of the matter unnecessary. We hold, therefore, that *N. J. S. A.* 6 :5–1 *et seq.* is not unconstitutional.

## Conclusion.

The order of the trial court dated March 7, 1959, granting summary judgment to plaintiffs and against Gaseteria on the issue of liability, is affirmed. The first paragraph of the trial court's order dated July 14, 1959 is affirmed insofar as it strikes the first, second and third separate defenses stated in Roscoe Turner's answer to RKO's fourth-party complaint attacking the service of process under *N. J. S. A.* 6 :5–3. The second, third, and fourth paragraphs of the trial court's order dated July 14, 1959, dismissing

Gaseteria's third- and RKO's fourth-party complaints and Gaseteria's and Bonded's cross-claim for contribution, and denying Gaseteria's application for leave to amend the third-party complaint to include a count on indemnification, are reversed. The fifth paragraph of the trial court's order of July 14, 1959, denying RKO's application for leave to amend its fourth-party complaint to include a count on indemnification, is affirmed. The cause is remanded to the Superior Court, Law Division, for further proceedings not inconsistent with this opinion.

Costs shall be awarded to plaintiffs against Gaseteria. Otherwise, costs are to abide the event.

WEINTRAUB, C. J., and FRANCIS, J. (dissenting in part). We join in the majority opinion except with respect to the holding that Gaseteria may seek indemnification from RKO.

The majority start with the proposition that one at fault may not seek indemnification from others upon an evaluation of degrees of fault. With that premise we agree. The majority then hold that Gaseteria may prove that RKO was solely blameworthy and thereby obtain indemnification. With this, we disagree.

The different conclusions stem from our respective conceptions of the reason for the statutory liability of the owner of a plane. The majority find the Legislature imposed liability *without fault* solely to place the economic burden where it may best be carried. If the premise were accurate, the ultimate conclusion of the majority would be correct. However, it seems to us the Legislature imposed absolute liability *because of probable fault,* upon the thesis that in sending his plane aloft the owner undertakes an operation fraught with danger of ground damage; that unless commensurate care is exercised, such injury will follow; that in most cases ground damage probably is caused by the owner's negligence; that evidence of fault is destroyed in the crash itself; and hence it is unfair to subject the land-based victim to a result made speculative by the destruction

of vital evidence. Accordingly the statute itself establishes fault. *Cf. United States v. Praylou*, 208 *F.* 2*d* 291 (4 *Cir.* 1953), *certiorari* denied 347 *U. S.* 934, 74 *S. Ct.* 628, 98 *L. Ed.* 1085 (1954). Our thesis is not dispelled by the circumstance that the statute leaves the pilot liable only for negligence. *N. J. S. A.* 6:2–7. His situation differs from the owner's in that he is not chargeable for neglect in the maintenance of the plane whereas the owner is responsible therefor as well as for the pilot's failure if the latter be his employee or agent. The cause of the crash being difficult to ascertain, it is reasonable for the Legislature in making a finding of fault to exempt therefrom the pilot whose lips are frequently sealed by the disaster and who indeed may himself be the victim of the owner's negligence.

For that reason we have no difficulty in finding that Gaseteria was guilty of a "wrongful act, neglect or default" within the meaning of the Joint Tortfeasor Contribution Law, *N. J. S.* 2*A*:53*A*–1 *et seq.*, and hence entitled to seek contribution from a joint wrongdoer. But for the same reason Gaseteria should not be permitted to compel the land-based defendant, RKO, to litigate the question whether Gaseteria was in fact negligent. That is the very issue the Legislature intended to foreclose. To permit Gaseteria to litigate that issue would be to subject RKO, an owner of land-based property, to the very hazards of proof which prompted the legislative decision.

We should make it clear we are not discussing the right of the plane owner to seek indemnification from persons who are not the beneficiaries of the statute as, for example, the owner of another plane involved in a collision in air or a malicious wrongdoer who intentionally causes a catastrophy. We speak only of a negligence action against a victim on land. *R. S.* 6:2–5 declares the ownership of space "to be vested in the several owners of the surface beneath, subject to the right of flight described in section 6:2–6 of this title." *R. S.* 6:2–6 provides that "Flight in aircraft over

the lands and waters of this state is lawful, unless at such a low altitude as to interfere with the then existing use to which the land or water, or the space over the land or water, is put by the owner * * *." Thus the statute makes unlawful the operation of a plane when it interferes, as it did here, with the use which RKO made of its land. *R. S.* 6 :2–7 makes the owner "absolutely liable for injuries to persons or property on the land or water * * *." The sole defense or matter of mitigation with respect to liability to the owner of property on land is contained in the same section in the phrase "unless the injury is caused in whole or in part by the negligence * * * of the owner or bailee of the property injured." We need not explore the precise meaning of the quoted phrase. It is enough to say that the statute establishes Gaseteria's fault as between it and RKO, leaving open, as between them, the further question whether RKO also negligently contributed to its own injury. Hence Gaseteria may not seek indemnification from RKO, for to permit it to do so would be to permit indemnification upon an evaluation of degrees of fault. Expressed in other terms, it would permit the trier of the facts to find Gaseteria was guilty of no wrong with respect to RKO in the teeth of a statute which says that it was.

We therefore would affirm the action of the trial court denying Gaseteria's motion to amend to seek indemnification from RKO.

*For affirmance in part and reversal in part*—Justices BURLING, JACOBS, PROCTOR, HALL and SCHETTINO—5.

*Dissenting in part*—Chief Justice WEINTRAUB, and Justice FRANCIS—2.