JOHN TORCHIA; EDNA TORCHIA; KAREN WOOLLEY, INDIVIDUALLY AND AS GUARDIAN AD LITEM FOR RYAN WOOLLEY, PLAINTIFFS-RESPONDENTS, v. WILLIAM F. FISHER, ADMINISTRATOR OF THE ESTATE OF WILLIAM R. FISHER, DEFENDANT, AND GARDEN STATE AVIATION, INC., A CORPORATION, DEFENDANT-APPELLANT, AND WALL HERALD CORPORATION, A CORPORATION, DEFENDANT-RESPONDENT.

Argued September 26, 1983—Decided December 22, 1983.

44

*William J. Brennan, III,* argued the cause for appellant (*Smith, Stratton, Wise, Heher & Brennan,* attorneys; *Alexander P. Waugh, Jr.,* on brief).

*Richard D. Schibell* argued the cause for respondents John Torchia, et al. (*Shebell & Schibell,* attorneys; *Sandra DeSarno Hlatky,* on brief).

*Harry V. Osborne, II,* argued the cause for respondent Wall Herald Corporation (*Evans, Koelzer, Marriott, Osborne, Kreizman & Bassler,* attorneys).

The opinion of the Court was delivered by

POLLOCK, J.

At issue is the interpretation and the constitutionality of *N.J.S.A.* 6:2–7, which imposes absolute liability on airplane owners for damage caused by their planes to persons and property on the ground. Although this Court upheld the constitutionality of the statute in *Adler's Quality Bakery, Inc. v. Gaseteria, Inc.,* 32 *N.J.* 55 (1960), that case did not raise the specific issue presented here, whether an airplane owner is absolutely liable under the statute if the plane is used without the owner's permission. In this case, the owner contends that the plane was stolen and that the statute does not apply because the imposition of absolute liability on an owner of a stolen plane would violate the due process clauses of the fourteenth amendment to the United States Constitution and of the New Jersey Constitution.

The trial court granted summary judgment on liability for plaintiffs, who suffered personal injuries and property damage from the crash of the plane. In an unreported opinion, the Appellate Division affirmed. We granted the owner's motion for leave to appeal, 93 *N.J.* 254 (1983), and now affirm the judgment of the Appellate Division.

I

Garden State Aviation, Inc. (Garden State), which is engaged in the business of training pilots to fly small aircraft, owned a Piper Aztec airplane. The airplane was stored in Garden State's facility at Monmouth County airport, owned by Wall Herald Corporation.

Early in the morning of June 4, 1980, William R. Fisher, a student of Garden State, took the airplane without permission from Garden State's facilities at the Monmouth County Airport. During the ensuing flight, Fisher crashed the plane into the residence of John and Edna Torchia, in Neptune, New Jersey. The crash destroyed the Torchias' house and damaged the adjacent home where their daughter, Karen Woolley, and her son,

Ryan Woolley, lived. Fisher, who was acquainted socially with Karen Woolley, was killed in the crash. The Torchias and the Woolleys instituted this action seeking to recover for property damage to the two homes, and the Woolleys also sought to recover for personal injuries.

## II

We first examine the Legislature's intent in enacting the statute. Originally promulgated in 1929 as *L. 1929, c.* 311, § 5, *N.J.S.A.* 6:2–7 was virtually identical to the Model Uniform Aeronautics Act drafted by the Commission on Uniform State Laws in 1922.[1] The only difference is that the Commission refers to a pilot as an "aeronaut," while the statute uses the term "airman." *See* Bogert, *Recent Developments in the Law of Aeronautics,* 8 *Cornell L.Q.* 26, 33 (1922–23). Soon after the creation of the Uniform Act, twenty-three states adopted it. *See* Elliot, *Liability of the Owner of an Aircraft Under the Federal Aviation Act of 1958,* 38 *J. Air L. & Com.* 547, 555 n. 39 (1972) (Elliot).

In 1943, however, the act was eliminated from the list of Uniform Laws. *See Handbook of The National Conference of*

---

[1]As enacted in New Jersey, the statute provides:

The owner of every aircraft which is operated over the land or waters of this State is absolutely liable for injuries to persons or property on the land or water beneath, caused by ascent, descent, or flight of the aircraft, or the dropping or falling of any object therefrom, whether such owner was negligent or not, unless the injury is caused in whole or in part by the negligence of the person injured, or of the owner or bailee of the property injured. If the aircraft is leased at the time of the injury to person or property, both owner and lessee shall be liable, and they may be sued jointly, or either or both of them may be sued separately. An airman who is not the owner or lessee shall be liable only for the consequences of his own negligence. The injured person, or owner or bailee of the injured property, shall have a lien on the aircraft causing the injury to the extent of the damage caused by the aircraft or object falling from it. A chattel mortgagee, conditional vendor or trustee under an equipment trust, of any aircraft, not in possession of such aircraft, shall not be deemed an owner within the provisions of this section.

*Commissioners on Uniform State Laws and Proceedings of the Fifty-Third Annual Conference* 66–67 (1943). Soon thereafter the number of states retaining the act dropped to eighteen. *Elliot* at 555 & n. 39. By 1957, New Jersey was one of only six states retaining the Uniform Act. *See* Wolff, *Liability of Aircraft Owners and Operators for Ground Injury,* 1957 *Ins. L.J.* 629, 638. At present, only Delaware, Hawaii, and South Carolina join New Jersey in imposing statutory absolute liability on aircraft owners. *See Del.Code Ann.* tit. 2, § 305 (1974); *Hawaii Rev.Stat.* § 263–5 (1976); *S.C.Code Ann.* § 55–3–60 (Law Co-op. 1976).

■ Although inaction is a questionable device for construing legislative intent, that the Legislature has retained the statute in face of rejection elsewhere underscores the conclusion that all airplane owners, even owners of stolen aircraft, should be absolutely liable for ground damage caused by airplane crashes. We do not suggest that the Legislature must continue that policy, only that the exclusion of the owners of stolen aircraft from the statute should be accomplished by the Legislature, not the judiciary. *See Vt.Stat.Ann.* tit. 5, § 224 (1972) (statute expressly exempts from liability owners or lessees of aircraft taken without their knowledge or permission).

Furthermore, including the owner of a stolen aircraft within the word "owner" in *N.J.S.A.* 6:2–7 is consistent with the apparent legislative intention. That the Legislature contemplated a broad definition of "owner" is confirmed by a 1946 amendment to the statute, *L.* 1946, *c.* 237, § 1, which exempts certain airplane financiers such as a chattel mortgagee, a conditional vendor, or a trustee under an equipment trust from the definition of "owner." This exemption reflects the Legislature's conclusion that a statutory amendment was necessary to exempt certain airplane financiers from the definition of "owner." Accordingly, the inclusion of owners of stolen aircraft within the statutory definition comports with the apparent legislative intent when the statute was enacted. Having determined that

the scope of *N.J.S.A.* 6:2–7 applies to owners of stolen airplanes, we now turn to the constitutionality of that application of the statute.

### III

In *Adler's Quality Bakery, Inc. v. Gaseteria, Inc., supra,* 32 *N.J.* 55, a plane flown with the owner's permission collided with a television tower, causing ground damage. Relying on *N.J.S.A.* 6:2–7, the trial court granted summary judgment on liability in favor of the property owners. On appeal, the airplane owner challenged the imposition of statutory absolute liability as constituting an unconstitutional deprivation of property without due process. As viewed by this Court in *Adler's,* "the question is whether the law is reasonable, not arbitrary or capricious, and whether it bears a real and substantial relation to the end sought to be attained." *Adler's, supra,* 32 *N.J.* at 68–69.

This Court also found in *Adler's* that the imposition of absolute liability upon an airplane owner did not constitute an unconstitutional deprivation of property in violation of the fourteenth amendment of the United States Constitution, or art. I, para. 1 or 20 of the New Jersey Constitution, without due process of law. *Adler's, supra,* 32 *N.J.* at 67–70. In reaching that conclusion, the Court noted the difficulty and expense frequently encountered by a victim in proving negligence in an airplane crash and the practical advantage to the victim of placing the risk of loss of ground damage on the aircraft owner. *Id.* at 69. The Court stated that it is within the legislative prerogative to shift the risk from the victim to the owner, and that the statute bears a reasonable relation to its purpose. *Id.* at 70.

█ In affirming the summary judgment, this Court further found that one of the goals of the statute was to shift the risk associated with ground damages from the victim to the plane owner, which the Court found to be a better risk bearer. *Id.* at 69–70; *see also Prentiss v. National Airlines,* 112 *F.Supp.* 306,

310 (D.N.J.1953). The same reasoning applies to the owner of a stolen airplane, who will in many cases be the better risk bearer than the injured victim. Furthermore, the owner derives profit or pleasure from ownership of the airplane. Although the injured parties receive no benefits from ownership of the airplane, they suffer the entire burden of ground damage and personal injuries without the ability to protect themselves or their property. *See* Vold, *Strict Liability for Aircraft Crashes and Forced Landings on Ground Victims Outside of Established Landing Areas,* 5 *Hastings L.J.* 1, 1 (1953).

As between an unsuspecting homeowner or person on the ground and the plane's owner, the Legislature could rationally decide to place the loss on the owner, for whom the plane served some purpose. *Compare Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 *U.S.* 663, 689–90, 94 *S.Ct.* 2080, 2094–95, 40 *L.Ed.*2d 452 (1974) (questioning whether legitimate purpose underlying forfeiture statute would be served by applying it to an owner of a stolen yacht). In addition, from the perspective of the victim, it is of no moment whether the rightful owner or a thief injures his person or property. Even if aviation is no longer an ultrahazardous activity, these other considerations support the constitutionality of the statutory imposition of absolute liability upon the owner of a stolen airplane. *See* Vold at 19–20 (citing one-sidedness of benefits of aviation and "loss spreading" capacity of owners as two factors that, even if flying is not "ultrahazardous," support imposition of absolute liability). When applied to the owner of a stolen airplane, *N.J.S.A.* 6:2–7 serves the legitimate purpose of shifting the loss caused by airplane crashes from the innocent victims on the ground to the owner of the plane.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice WILENTZ, and Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK, O'HERN and GARIBALDI—7.

*For reversal*—None.