136 N.J. Super. 468 (1975)
346 A.2d 628
WILLIAM H. HUCK, SUSAN HUCK, ALEXANDRIA HUCK AND JULIA BEDELL, INDIVIDUALLY AND AS PARTNERS, TRADING AS SAXON COMPANY, SUCCESSOR TO A.W.H. CO., PLAINTIFFS,
v.
GABRIEL REALTY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided September 16, 1975.
*470 Mr. William J. Gannon for plaintiffs (Mr. Edward V. Ryan, attorney).
Mr. Francis X. Rieger for defendant.
PETRELLA, J.C.C., Temporarily Assigned.
This action poses a question of first impression in this State concerning the effect of material misrepresentations upon a contract for indemnification. The dispute arose out of a letter whereby defendant Gabriel Realty, promised "to defend and hold harmless" plaintiffs Huck Co., Inc. and certain individuals trading as Saxon Company, successor to A.W.H. Co.
The December 16, 1963 letter reads:
We appreciate this opportunity to be of service to you in the matter of your purchase of the Glenwal Building and land in Montvale, New Jersey. We acknowledge your letter stating that you will pay our commission of $12,500 upon closing of title.
We also acknowledge the statements of Mr. Tom McCormack and William Schlessinger of your company wherein they state that at no time did one Arthur Augustensen represent to them that the Glenwal Building was for sale.
*471 Under these circumstances, we undertake and agree to defend and hold harmless you and your company and the A.W.H. Co. against any claims that may be made for commission from this sale by Arthur Augustensen.
The statements of Messrs. McCormack and Schlessinger also appeared in a notarized letter dated December 17, 1963 which stated:
Mr. Arthur K. Augustensen showed us land in several areas in September, 1963. At no time did he offer for sale or lease the Glenwal Company, Inc.'s building on Glenview Road, Montvale, New Jersey, nor did he state that this building was available for sale or lease.
Subsequently Augustensen, a broker interested in the Montvale transaction, brought suit and was awarded judgment of $15,000 in compensatory damages for wrongful interference with his prospective opportunity to earn a commission. Plaintiffs herein, after an unsuccessful appeal,[1] satisfied the judgment by paying $16,140.61, which included interest and costs. They then demanded indemnification from defendant for that amount, plus reasonable attorneys' fees for the trial and appeal.
Defendant denies liability, counterclaiming for attorneys' fees based upon plaintiffs' alleged false swearing and misrepresentations. The facts were largely stipulated, with the exception of the Appellate Division decision in the Augustensen case, docket number A-507-68, which contained a judicial resolution of some of the facts at issue in the instant action.
The Appellate Division decision affirmed the factual determinations of the trial court which found that Augustensen had shown Huck's representatives the property in question before Huck engaged Gabriel Realty as its broker. In so finding, the court rejected McCormack and Schlessinger's *472 version as evidenced by their statements in the December 17 letter.
Plaintiff argues that this court is not bound by the conclusions reached by the Appellate Division and thus the veracity of the December 17 letter may be argued and proved. Defendant counters that plaintiff is collaterally estopped from such an approach, and this court agrees.

I
Collateral estoppel is the doctrine which renders conclusive in a subsequent action on a different claim the determination of issues actually litigated in a prior action. Continental Can Co. v. Hudson Foam, 123 N.J. Super. 364 (Law Div. 1973), rev'd on other grounds, 129 N.J. Super. 426 (App. Div. 1974).
More specifically, in suits to enforce indemnity agreements, the indemnitee is bound by facts adjudicated in the previous judgment on which he now relies. George M. Brewster & Son, Inc. v. Catalytic Constr. Co., 17 N.J. 20, 34-35 (1954). In Brewster plaintiff sued under an indemnity provision of a crane rental contract to recover losses sustained when injured employees of defendant recovered judgments for supplying a defective and dangerous crane. Plaintiff argued it was not bound by the record of the previous judgments in favor of the injured employees, but the Court disagreed, observing:
Where the indemnitee relies on the judgment against him in the earlier action, as the basis of his right of recovery over, he "must take for better or worse the adjudicated facts on which the judgment rests." Builders Supply Co. v. McCabe, 366 Pa. 322, 77 A.2d 368, 24 A.L.R. 2d 319 (Sup. Ct. 1951). See also Crawford v. Pope & Talbot, Inc., 206 F.2d 784 (3 Cir.1953). He cannot both approbate and reprobate.
Public Service Elec. & Gas Co. v. Waldroup, 38 N.J. Super. 419, 428-429 (App. Div. 1955), is in accord. There the putative indemnitee relied on a judgment against him *473 in an action against the putative indemnitor. He was bound by the adjudicated facts on which that judgment rested.
In the view of the Appellate Division the contents of the letter of December 17, 1963 are unreliable and in contravention of the facts. Collateral estoppel renders this determination binding upon this court and upon plaintiff.
Thus a question is raised as to the effect of the misrepresentations disclosed therein on the indemnity agreement. In other words, may a material mispresentation which induced the indemnification contract be enforced by the indemnitee?
42 C.J.S. Indemnity, § 4b. at 568-569, states:
While the indemnitee need not make any unrequested disclosure of any fact which would not change or increase the risk or obligation the indemnitor has assumed, an indemnitor who is induced to enter into the contract of indemnity by fraudulent representation or concealment on the part of the indemnitee as to some material fact is not bound by the contract.
General Ins. Co. of America v. Fleeger, 389 F.2d 159 (5 Cir.1968), involved the effect of misrepresentations made by the insurance company's agents upon four indemnity agreements. In sustaining the trial court's application of the law, it was posited:
That an indemnitee's reliance on false representation invalidates an indemnity agreement is incontrovertible. 50 Am. Jur. 163, Bell v. Bradshaw (Tex. Civ. App.) 342 S.W.2d 185; Kamp v. Hargis Bldg. Co. (Tex. Civ. App.), 238 S.W.2d 277. It is equally well settled that an act on the part of an indemnitee which materially increases the risk or prejudices the right of the indemnitor will discharge the indemnitor to the extent that he has been damaged as a result of that act. Hiern v. St. Paul-Mercury Indemnity Co., 262 F.2d 526 (5 Cir.1959). 389 F. 2d at 161.
An appropriate analogy to contractual indemnity can be found in the sister area of common law indemnity among joint tort feasors.
*474 It is well settled in New Jersey that a party seeking common law indemnification from another must be without fault. Public Service Elec. & Gas Co. v. Waldroup, supra 38 N.J. Super. at 432.
As stated in Restatement, Restitution, § 96 (1937):
A person who, without personal fault, has become subject to tort liability for the unauthorized and wrongful conduct of another, is entitled to indemnity from the other for expenditures properly made in the discharge of such liability.
This sound rule was quoted approvingly by our Supreme Court in Adler's Quality Bakery, Inc. v. Gaseteria, Inc., 32 N.J. 55, 80 (1960), and there is no reason why such a rule cannot be applied in the area of contractual indemnification. See General Ins. Co. of America v. Fleeger, supra.
The court finds that the misrepresentation or concealment in the December 17, 1963 letter was material and a significant factor in inducing defendant herein to undertake the hold harmless agreement. The court holds that the proper rule to apply to such misrepresentation or concealment in a contract situation is the same as in a tort action. The result of such misrepresentation or concealment is to release the indemnitor from being bound by his undertaking. Thus, plaintiffs cannot enforce the hold harmless undertaking or succeed in their claim for counsel fees.
This will result in dismissal of the complaint.

II
Plaintiffs would not appear entitled to indemnity on the prior judgment for another reason. In the instant action the original intent was to indemnify against a claim by Augustensen for his commission, not a tort claim. A tort action is separate and distinct from a contract action. Louis Kamm, Inc. v. Flink, 113 N.J.L. 582 (E. & A. 1934); and compare McCann v. Biss, 65 N.J. 301 (1974), which held that a tort theory cannot be substituted for a contract *475 theory barred by the statute of frauds. Applying the usual strict construction rules regarding indemnity agreements, so that a clear and unequivocal intent to indemnify to a tort must appear, e.g., George M. Brewster & Son, Inc. v. Catalytic Constr. Co., supra, the undertaking does not apply with respect to the tort judgment on an intentional tort claim. See Baut v. Pethick Constr. Co., 262 F. Supp. 350, 363 (M.D. Penn. 1966); Davidson v. Welch, 270 Cal. App.2d 220, 75 Cal. Rptr. 676 (D. Ct. App. 1969); and Pittsburgh Steel Co. v. Patterson-Emerson-Comstock, Inc., 404 Pa. 53, 59, 171 A.2d 185, 188 (Sup. Ct. 1961).

III
Defendant's counterclaim for legal fees in connection with defending this type action is not compensable in this State nor warranted here. See R. 4:42-9; Gerhardt v. Continental Ins. Cos., 48 N.J. 291 (1966); Grober v. Kahn, 47 N.J. 135, 146 (1966); Cohen v. Fair Lawn Dairies, Inc., 86 N.J. Super. 206, 215 (App. Div. 1965), aff'd 44 N.J. 450 (1965); and see Red Devil Tools v. Tip Top Brush Co. Inc., 50 N.J. 563, 576 (1967).
The complaint and counterclaim are dismissed, with prejudice and without costs.
NOTES
[1] The Appellate Division struck exemplary damages of $3,000.