274 N.J. Super. 265 (1994)
643 A.2d 1057
VICTOR J. TRYANOWSKI, VICTOR TRYANOWSKI, AND MARY TRYANOWSKI, PLAINTIFFS,
v.
LODI BOARD OF EDUCATION, PATRICK TIRICO, DALE SIPOS, GERRY GUNDRY, FRANK QUATRONE, AND RICHARD HOLMES, DEFENDANTS.
Superior Court of New Jersey, Law Division Bergen County.
Decided March 8, 1994.
*266 Marcel R. Wurms, for plaintiffs.
John T. Petras, for defendants (Isaacson, Dougherty & Zirulnik, attorneys).
NAPOLITANO, J.S.C.

I. INTRODUCTION
This case addresses the issue of whether a judge of the Law Division of the Superior Court may analyze the viability of a cause of action under the New Jersey Tort Claims Act, N.J.S.A. 59:1-1  59:12-3, and, on the basis of that analysis alone, deny leave to file a late notice of claim pursuant to N.J.S.A. 59:8-9. *267 This Court finds that a trial judge may deny leave to file a late notice of claim where the judge concludes that the plaintiff fails to present a viable claim. Here, since the underlying cause of action asserted by the plaintiffs for counsel fees is not viable under the New Jersey Tort Claims Act, leave to file a late notice of claim is denied.

II. FACTS
In August 1992, plaintiff Victor J. Tryanowski, who was a high school student at the time, attended a football camp run by the defendant Lodi Board of Education. On the evening of August 27, 1992, he and some other students attending the camp allegedly engaged in some activity that is akin to what is commonly known as "hazing". Specifically, Victor J. Tryanowski is alleged to have intentionally and criminally restrained another high school student attending the camp, covered him with offensive substances, and forcibly shaved his head (hereinafter "the incident").
As a result of his alleged conduct, this infant plaintiff, Victor J. Tryanowski, was named as a defendant in a complaint filed on July 29, 1993, in the Superior Court of New Jersey, Chancery Division, Family Part, Warren County, and charged with violating N.J.S.A. 2C:13-2(a). The remaining plaintiffs, Victor Tryanowski and Mary Tryanowski, are the parents of the infant plaintiff. The remaining defendants are coaches and other employees of defendant Lodi Board of Education. This complaint was filed after more than a year had passed since the incident occurred.
At the time of the incident, it is alleged that only one agent or employee of the Lodi Board of Education was on the premises and that he was not present on the same dormitory floor where the incident occurred. Plaintiffs contend this absence amounted to negligent supervision on the part of the defendants and that the incident would never have occurred had the students been properly supervised.
The infant plaintiff and his parents now seek leave to file a late notice of claim pursuant to N.J.S.A. 59:8-9. Plaintiffs allege that, *268 as a direct and proximate result of the negligent supervision on the part of the agents or employees of the Lodi Board of Education, the plaintiffs have sustained and will sustain in the future, monetary damages. The monetary damages alleged are the attorney's fees (and attendant costs) the plaintiffs have incurred and might incur in the future to defend against the juvenile complaint and any possible civil lawsuits stemming from the incident.
Subsequent to the filing of plaintiffs' motion for leave to file a late notice of claim, the infant plaintiff pled guilty to a violation of N.J.S.A. 2C:33-4 in a juvenile proceeding and that action is now completed. Thus, the plaintiffs' legal fees and costs for the criminal case have already been incurred and the only potential attorney's fees that plaintiffs could conceivably incur in the future would be in connection with the defense of a possible civil lawsuit which could be brought by the victim of the incident.

III. ANALYSIS

A. A TRIAL JUDGE MAY ANALYZE THE VIABILITY OF A CAUSE OF ACTION UNDER THE NEW JERSEY TORT CLAIMS ACT AND DENY LEAVE TO FILE A LATE NOTICE OF CLAIM IF THE CAUSE OF ACTION IS NOT VIABLE
The New Jersey Tort Claims Act was enacted in 1972, as a mandate by the Legislature to bring uniformity to the law in this State with respect to sovereign immunity to tort claims enjoyed by public entities. The Act was necessitated by Willis v. Dept. of Cons. & Ec. Dev., 55 N.J. 534, 264 A.2d 34 (1970), in which the Supreme Court abrogated the doctrine of sovereign immunity to tort claims, and thus the Act's purpose was to re-establish immunity for all public entities in New Jersey, on a basis more coherent and equitable than that which had obtained prior to Willis. Margolis and Novack, Claims Against Public Entities (1993), at ix.
The New Jersey Tort Claims Act requires that a notice of claim against any public entity be filed within 90 days after the accrual *269 of a cause of action or else that claim will be forever barred. See N.J.S.A. 59:8-8. However, under certain circumstances, a late notice of claim may be filed pursuant to N.J.S.A. 59:8-9, which states:
A claimant who fails to file notice of his claim within 90 days as provided in section 59:8-8 of this act, may, in the discretion of a judge of the superior court, be permitted to file such notice at any time within 1 year after the accrual of his claim provided that the public entity has not been substantially prejudiced thereby....
The comments to this section state:
The granting or denial of permission to file a late claim within the one year period is a matter left to the sound discretion of the trial judge which will be sustained on appeal in the absence of a showing of an abuse thereof. (citations omitted)
Permission is contingent on two showings being made. First, the court must decide if there are sufficient reasons for the claimant's failure to file within the 90 day period specified by 59:8-8a. and second, whether the public entity will be substantially prejudiced by the granting of the request. (citations omitted)
* * * * * * * *
In addition, since the court must engage in a two-tier review process, i.e., determination of sufficient reasons and the existence of prejudice to the entity, a review of the pleadings setting forth the underlying cause of action against the entity may well be necessary in order to determine whether relief should be granted.

Claims Against Public Entities, supra, comment to N.J.S.A. 59:8-9, at 123-127 (emphasis added).
It appears to be implicit in the comments that the grant of discretion to a trial judge in making the decision of whether to grant or deny leave to file a late notice of claim includes the power to analyze the viability of the underlying cause of action. To allow a frivolous claim to proceed to complaint stage would be against the public policy of this State to protect the interests of public entities and to guard all litigants against frivolous claims. See McKeown-Brand v. Trump Castle Hotel & Casino, 132 N.J. 546, 626 A.2d 425 (1993). The Tort Claims Act was specifically enacted to restore sovereign immunity to public entities which had been abrogated by the Supreme Court in Willis, supra, 55 N.J. at 534, 264 A.2d 34. The Act outlines the criteria that must be met in order to maintain a cause of action against a public entity. The *270 two-tier inquiry contained in N.J.S.A. 59:8-9 is intended to protect the public entity from the prejudice that necessarily flows from defending a stale claim. See Claims Against Public Entities, supra, comment to N.J.S.A. 59:8-9, at 126. It would be contrary to the spirit of the Act to protect a public entity from a stale but meritorious cause of action while forcing the public entity to defend a frivolous but potentially timely cause of action. Additionally, it runs against the grain of public policy to force a public entity to incur the cost of defending an action that ultimately and undoubtedly will be dismissed on the merits.
Although the comments to the New Jersey Tort Claims Act are generally helpful and have been asserted to have the precedential value and weight of legislative history, Rochinsky v. State of N.J. Dept. of Transp., 110 N.J. 399, 407, n. 3, 541 A.2d 1029 (1988), they often, as in the present case, do not hold all the answers. Accordingly, it is well settled that
[a] full understanding of the Act is impossible without a thorough working knowledge of the decisions of our courts interpreting the Act.
Claims Against Public Entities, supra, at vii. Unfortunately, in this case there is a complete dearth of New Jersey case law on this issue.
However, all is not lost. Because the New Jersey Tort Claims Act was modeled after the California Tort Claims Act of 1963, decisions of the California courts are often helpful in interpreting the Act where the case law in New Jersey is lacking. See Claims Against Public Entities, supra, at ix.
One case in California supports the proposition that a trial judge must necessarily analyze the viability of the underlying cause of action when deciding whether or not to allow a late filing. In John K., a minor, v. Oakland Unified School District, 48 Cal.3d 438, 256 Cal. Rptr. 766, 769 P.2d 948 (Cal. 1989), a student alleged that a teacher had sexually molested him. For fear of retaliation, the student had not told anyone about the incident for some significant period of time. The notice of claim was filed fifteen months after the alleged molestation, and when the complaint was *271 eventually brought by the student's parents against the school district and teacher, it alleged, among other things, vicarious liability under the doctrine of respondeat superior.
The trial court granted a nonsuit on behalf of the school district for failure of the plaintiffs to comply with the late notice of claim requirements under California's Tort Claims Act. The Court of Appeals reversed the trial court holding that the one year period for filing a late claim was tolled under the doctrine of delayed discovery in that the claim did not accrue until the boy told his parents about the incident.
The California Supreme Court rejected the doctrine of delayed discovery as a basis of tolling the one year period. In the alternative, the Supreme Court found that the doctrine of equitable estoppel might apply to toll the one year period for filing a late claim. Consequently, the California Supreme Court remanded the case to the trial court for a determination of the equitable estoppel issue. However, California's highest court specifically held that the trial court could not consider or reinstate that portion of the plaintiff's claim that was based upon respondeat superior. John K., 48 Cal.3d at 451-53, 256 Cal. Rptr. at 774-75, 769 P.2d at 956-57. The Supreme Court held that that doctrine did not apply to hold a school district liable for the intentional sexual misconduct of one of its teachers on the factual scenario as presented.
In effect, the California Supreme Court analyzed the underlying cause of action, determined that a portion of it was not viable, and directed the trial court to consider the timeliness of the filing of the notice of claim only with respect to the remaining, i.e., potentially viable, causes of action.
Although this Court is not bound by the decision of the California Supreme Court in John K, supra, it is inclined to follow its lead. This Court is convinced by the reasoning in John K. that it is proper for a trial judge to analyze an underlying cause of action to determine whether it is viable under New Jersey's Tort Claims Act and on that basis alone deny leave to file a late notice of claim pursuant to N.J.S.A. 59:8-9.

*272 B. A PLAINTIFF'S CLAIM FOR ATTORNEY'S FEES INCURRED IN DEFENSE OF A CRIMINAL ACTION OR A CIVIL ACTION NOT AGAINST THE STATE IS NOT VIABLE UNDER THE TORT CLAIMS ACT

There is scant case law in both New Jersey and California on this issue. Consequently, it is necessary to look at the Tort Claims Act itself. N.J.S.A. 59:2-1 states:
a. Except as otherwise provided by this act, a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person. (emphasis added)
The Act defines an injury as "death, injury to a person, damage to or loss of property or any other injury that a person may suffer that would be actionable if inflicted by a private person." N.J.S.A. 59:1-3. Thus, immunity on the part of the governmental entity is the underlying theme of the Act, whereas liability is the exception. See Claims Against Public Entities, supra, comment to N.J.S.A. 59:2-1, at 14-15; Weiss v. New Jersey Transit, 128 N.J. 376, 608 A.2d 254 (1992) (the immunity provisions of the Act will always take precedence over common law or (other) statutory liabilities).
Plaintiffs argue that money spent on legal fees in a criminal case is an "injury" which comes under the scope of N.J.S.A. 59:1-3, since legal fees paid to defend an action brought by a third party may be a compensable injury in a case in which the State is not a party. Thus, plaintiffs contend that legal fees incurred in the defense of a juvenile proceeding should be considered an "injury" under the Act. Plaintiffs further contend that legal fees incurred in connection with a possible civil lawsuit arising from the criminal incident likewise should be considered an "injury". Plaintiffs cite State Dep't of Environ. Protect. v. Ventron Corp., 94 N.J. 473, 505, 468 A.2d 150 (1983), to support this proposition. However, this Court is not persuaded by plaintiffs' arguments.
Ventron, supra, is clearly distinguishable from the present case. In Ventron, the defendants Wolf were sued by the then State Department of Environmental Protection for clean up of contaminated property they had purchased from defendant Ventron. *273 Ventron had contaminated the property and had defrauded the Wolfs in the sale. Accordingly, the Supreme Court held that the Wolfs could recover counsel fees incurred in defending the DEP's lawsuit. Unlike the infant plaintiff in the present matter, who intentionally engaged in conduct that resulted in his guilty plea to a criminal charge and in potential civil liability, the Wolfs were innocent parties. They merely purchased a piece of property which they believed to be free of contamination.
In the present case, even if the defendants were negligent in their supervision, it cannot seriously be argued that the cost of an attorney for defending a criminal matter or a possible civil suit resulting from criminal activity was the type of "injury" contemplated by the Legislature when it enacted the Tort Claims Act. As discussed above, the Act was enacted to reestablish sovereign immunity for public entities. The principle of sovereign immunity is the rule and the liability of the public entity is the exception. The Act "is intended to be strictly construed to effectuate its purpose. For this reason, courts should be cautious in sanctioning novel causes of action." Claims Against Public Entities, supra, comment to N.J.S.A. 59:1-2, at 3 (citations omitted); Claims Against Public Entities, supra, comment to N.J.S.A. 59:2-1, at 16; Ayers v. Jackson Tp., 106 N.J. 557, 598, 525 A.2d 287 (1987). Indeed the preamble to the Act itself condemns and thus expressly prohibits "novel" causes of action against public entities. The language of N.J.S.A. 59:2-1, subd. a itself does not contemplate reimbursement of counsel fees incurred in the defense of an action arising from criminal activity as an "injury" as such expenditures are not "otherwise provided for" in the Act.
As well, the language of the Act defining injury as loss of property that a person may suffer as a consequence to actionable harm inflicted by a private person gives these plaintiffs no comfort as there is no basis in New Jersey law or public policy for holding a third party liable for the intentional acts of a defendant in criminal or civil litigation. Under the well-established law of this State, a person may not even be indemnified for his own negligent *274 acts absent an express and unequivocal agreement to the contrary. Ramos v. Browning Ferris Ind. of So. Jersey, Inc., 194 N.J. Super. 96, 101, 476 A.2d 304 (App.Div. 1984), aff'd 103 N.J. 177, 510 A.2d 1152 (1986); Stier v. Shop Rite of Manalpan, 201 N.J. Super. 142, 150, 492 A.2d 1055 (App.Div. 1985); Rommell v. U.S. Steel Corp., 66 N.J. Super. 30, 42, 168 A.2d 437 (App.Div. 1961), certif. denied, 34 N.J. 580, 170 A.2d 544 (1961); See Doloughty v. Blanchard Const. Co., 139 N.J. Super. 110, 352 A.2d 613 (Law Div. 1976).
So clear is the public policy of this State against indemnification for one's own negligence and so suspect are such agreements themselves that courts demand clear and unequivocal evidence of the parties' intent to undertake such an arrangement. In some circumstances, regardless of the expressed intention of the parties, the Legislature has declared outright that such agreements are against public policy. See N.J.S.A. 2A:40A-1 to 4 (contracts that purport to hold the promisee harmless from liability for damage caused solely by the negligence of the promisee are against public policy and therefore void and unenforceable).
The rationale of this public policy is rooted in the concept of indemnification itself. At common law, a party seeking indemnification had to be completely free from fault. Huck v. Gabriel Realty, 136 N.J. Super. 468, 474, 346 A.2d 628 (Law Div. 1975); See also Ramos, supra, 103 N.J. at 190, 510 A.2d 1152 (citing Cartel Capitol Corp. v. Fireco of N.J., 81 N.J. 548, 566, 410 A.2d 674 (1980) (ordinarily a party who is at fault may not obtain indemnification for its own acts)); Adler's Quality Bakery, Inc. v. Gaseteria, Inc., 32 N.J. 55, 80, 159 A.2d 97 (1960) (indemnity between tortfeasors has generally been confined to those whose negligence is not morally culpable but is merely constructive, technical, imputed, or vicarious); Echevarias v. Lopez, 240 N.J. Super. 104, 110, 572 A.2d 671 (App.Div. 1990) (citing Ramos, supra, 103 N.J. at 190-91, 510 A.2d 1152). The right of indemnity
enures to a person who, without active fault on his own part, has been compelled by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable.
[Enright v. Lubow, 202 N.J. Super. 58, 85, 493 A.2d 1288 (App.Div. 1985).]
*275 Thus, at common law, one who was "actively" negligent could not be indemnified and therefore could not recover counsel fees from an indemnitor. See Central Motor v. E.I. duPont de Nemours, 251 N.J. Super. 5, 13, 596 A.2d 759 (App.Div. 1991) (indemnitee may recover counsel fees if he is free from active wrongdoing).
If one who is "actively" negligent cannot recover counsel fees, it would follow logically that one who commits an intentional tort (which here is also a crime) similarly cannot recover counsel fees because the added element of intent negates the possibility of being free from fault. See Huck, supra, 136 N.J. Super. at 475, 346 A.2d 628. As the inimitable Professor Prosser stated,
[i]n general, and on the basis either of common experience as to what is intended, or of public policy to discourage aggravated wrongs, such [indemnity] agreements are not construed to cover more extreme forms of negligence which are described as wilful, wanton, reckless or gross, or to any conduct which constitutes an intentional tort.
[Prosser, The Law of Torts, § 68 (4th ed. 1971) at 444-45.]
Accordingly, if a purported indemnification for legal fees is clearly against public policy in the case of intentional behavior, then a purported indemnification for legal fees in the case of criminal acts would be equally against public policy, if not more so. See Doe v. Durtschi, 110 Idaho 466, 716 P.2d 1238 (Idaho 1986) (Idaho Supreme Court refused to allow a teacher to be indemnified by the school district for sexual molestation of students committed with criminal intent). One court in Michigan has clearly stated such a policy. In Glazier v. Lee, 171 Mich. App. 216, 429 N.W.2d 857 (1988), the plaintiff was a patient of the defendant psychologist who claimed that the doctor's malpractice caused him to kill his girlfriend. He sued the psychologist for emotional and psychological injuries that resulted from his own criminal act. The Michigan Court of Appeals held that
a person cannot maintain an action if, in order to establish his cause of action, he must rely, in whole or in part, on an illegal or immoral act or transaction to which he is a party, or to maintain a claim for damages based on his own wrong or caused by his own neglect, ... or where he must base his cause of action, in whole or in part, on a violation by himself of the criminal or penal laws....
[Glazier, supra, 171 Mich. App. at 219-20, 429 N.W.2d at 859 (citing Cole v. Taylor, 301 N.W.2d 766, 768 (Iowa 1981)).]
*276 Thus, as the plaintiff's act was at once the source of his own criminal responsibility and the basis for his civil claim, the court dismissed the plaintiff's complaint. The court stated that
[T]o allow plaintiff to proceed in the present civil action would allow the plaintiff to shift the responsibility for his crime from himself to the defendant. This we cannot do.... "[I]t would be, plainly and simply wrong as a matter of public policy to allow recovery."
[Glazier, supra, 171 Mich. App. at 221, 429 N.W.2d at 860 (citing Cole, supra, 301 N.W.2d at 768).]
Based upon all of the foregoing, it is clear that the Legislature never intended that the Tort Claims Act would permit the imposition of such counsel fees upon a governmental entity.
The only provision in the Tort Claims Act which actually allows for an award of attorney's fees is N.J.S.A. 59:9-5, which provides:
In any action against a public entity or a public employee under this act, the court may, in its discretion, award a successful claimant (a) costs ordinarily allowable in the private sector (b) expert witness fees not exceeding a total of $100.00 and (c) reasonable attorney's fees; provided however that there shall be no such recovery in any case where damages are awarded for pain and suffering. (emphasis added).
Under this provision, an award of fees is envisioned only where a claimant has already prevailed against the public entity on a viable cause of action. As the infant plaintiff herein pled guilty to a criminal charge, he cannot be considered to be a prevailing party or "successful claimant" in any sense. Even if the plaintiffs herein were to prevail in a possible future civil lawsuit arising from the infant plaintiff's criminal activity by, for example, successfully defending against the victim's potential civil suit, they would still not be "successful claimants" under the Act. They would not have satisfied the preliminary requirement that would entitle them to fees: they would not have prevailed in an action against a public entity.
Further, it should be noted that, in fact, there has been no civil suit filed against these plaintiffs. Thus, there exists only the possibility that these plaintiffs will incur legal fees in a civil suit that might be filed at some unknown time in the future. Such a *277 tenuous claim could not conceivably have been contemplated by the Legislature when it enacted N.J.S.A. 59:9-5.
On a final note, the infant plaintiff in this action effectively is requesting that the Lodi Board of Education, a public entity, defend and indemnify him in the juvenile action as well as in any potential civil suit. Only public employees acting within the scope of their public employment are entitled to such indemnification. N.J.S.A. 59:10-1  59:10-10. [See discussion of indemnification, supra.]
For the foregoing reasons, this Court finds that the plaintiffs' asserted cause of action for counsel fees incurred in the defense of a criminal action or any possible civil lawsuit arising from the criminal activity of one of them is not viable under the New Jersey Tort Claims Act.

IV. CONCLUSION
This Court holds that a trial judge may analyze the viability of a cause of action under the New Jersey Tort Claims Act and, on the basis of that analysis alone, deny leave to file a late notice of claim. Additionally, the underlying cause of action asserted by the plaintiffs in this case for counsel fees incurred in the defense of a criminal action or potential civil lawsuit arising from the criminal activity of one of them is not viable under the New Jersey Tort Claims Act. Accordingly, leave to file a late notice of claim is denied.