**ROTTLUND HOMES OF NEW JERSEY, INC., et al.,**
Plaintiffs,

v.

**SAUL, EWING, REMICK & SAUL, L.L.P., Defendant and Third–Party Plaintiff**

v.

**Kevin Scarborough and KSLG, LLC, Third–Party Defendants.**

No. CIV.A.01–783–JJF.

United States District Court, D. Delaware.

Jan. 30, 2003.

John S. Grady, Grady & Hampton, P.A., Dover, Delaware, Winthrop & Weinstine, P.A., Minneapolis, Minnesota (Robert R. Weinstine, Esquire and Craig S. Krummen, of counsel), for Plaintiffs.

Edward M. McNally, Thomas E. Hanson, Jr., Morris, James, Hitchens & Williams LLP, Wilmington, Delaware, for Defendant and Third–Party Plaintiff.

David E. Wilks, White and Williams LLP, Wilmington, Delaware, White & Williams LLP, Philadelphia, Pennsylvania (M. Melvin Shralow, of counsel), for Third–Party Defendants.

## OPINION

FARNAN, District Judge.

Presently before the Court are two motions: (1) a Motion For Partial Summary Judgment (D.I.126) filed by Plaintiffs, Rottlund Homes of New Jersey, Inc. and Rottlund Company, Inc. seeking summary judgment on the Counterclaim filed against it by Defendant, Saul, Ewing, Remick & Saul L.L.P.; and (2) a Motion To Dismiss (D.I.84) filed by Third–Party Defendants, Kevin Scarborough and KSLG, LLC requesting the Court to dismiss Saul, Ewing, Remick & Saul L.L.P.'s Third–Party Complaint. For the reasons discussed, Plaintiffs' Motion For Partial Summary Judgment will be granted, and Third–Party Defendants' Motion To Dismiss will be granted in part and denied in part. Third–Party Plaintiff's claim for contribution will be dismissed, and Third–Party Plaintiff's claim for indemnification will be stayed.

## BACKGROUND

### I. Procedural Background

Rottlund Homes of New Jersey, Inc. ("RHNJ") is a wholly-owned subsidiary of Rottlund Company Inc. ("Rottlund Compa-ny") (collectively "Rottlund"). Rottlund filed its Complaint against the law firm of Saul, Ewing, Remick & Saul, L.L.P. n/k/a Saul Ewing LLP ("Saul Ewing") on November 26, 2001, alleging that Saul Ewing committed malpractice when it represented RHNJ's CEO, Kevin Scarborough and his company, KSLG, LLC ("KSLG"), in connection with the November 2000 sale of a real estate development called the Springmill Property.

On January 15, 2002, Saul Ewing filed an Answer and Counterclaim to Rottlund's Complaint. In its Answer, Saul Ewing denies any wrongdoing and alleges that it properly relied on the instructions of RHNJ's authorized agent, Kevin Scarborough, in completing the real estate transaction. By its Counterclaim, Saul Ewing seeks damages against Rottlund for Rottlund's alleged breach of the March 1, 2001 Settlement Agreement With Mutual General Releases (the "Release" or the "Settlement Agreement") between Rottlund and Scarborough and KSLG.

On April 12, 2002, Saul Ewing filed a Motion For Leave To File a Third–Party Complaint (D.I.30) against Third–Party Defendants Scarborough and KSLG. By its Third–Party Complaint, Saul Ewing contends that it is entitled to contribution or indemnification from Scarborough and KSLG.

On April 29, 2002, Rottlund filed a Memorandum in Opposition to Defendant's Motion For Leave To File A Third–Party Complaint (D.I.34). Rottlund requested the Court to deny Saul Ewing's motion on the grounds that (1) Saul Ewing possessed non-delegable duties to Rottlund; (2) equity does not allow contribution by a joint tortfeasor who acts inequitably; (3) Saul Ewing failed to state a claim for breach of implied warranty of authority; and (4) tort

law bars a join tortfeasor, who acted intentionally, from obtaining contribution.

By Memorandum and Order dated August 23, 2002, the Court granted Saul Ewing's Motion For Leave To File a Third-Party Complaint. In so doing, the Court concluded that Scarborough and KSLG are central to the facts underlying Rottlund's claims and Saul Ewing's defenses. Shortly thereafter, Scarborough and KSLG filed the instant Motion To Dismiss Saul Ewing's Third-Party Complaint.

On August 28, 2002, Rottlund filed the instant Motion For Partial Summary Judgment requesting the Court to dismiss Saul Ewing's Counterclaim against Rottlund. By its Motion, Rottlund contends that Saul Ewing lacks standing to enforce the terms of the Settlement Agreement, because it is not a third-party beneficiary to the Settlement Agreement.

Rottlund's Motion For Partial Summary Judgment and Scarborough and KSLG's Motion To Dismiss have been fully briefed. Accordingly, these Motions are ripe for the Court's review.

## II. Factual Background

### A. *The Parties*

Rottlund Company is a corporation organized under the laws of the State of Minnesota. Through its subsidiaries, Rottlund Company designs, builds and markets homes throughout the United States.

In 1996, Rottlund Company purchased Kevin Scarborough, Inc., trading as Scarborough Homes, a company located in New Jersey. The assets of Scarborough Homes were then transferred to the newly created RHNJ, a wholly-owned subsidiary of Rottlund Company. RHNJ is also a Minnesota corporation, but its principal place of business is in Gibbsborough, New Jersey. RHNJ continued to trade as Scarborough Homes and focused its business on real estate development in New Jersey and Delaware.

Kevin Scarborough is a New Jersey resident and the former owner of Scarborough Homes. Following Rottlund's acquisition of Scarborough's company, Scarborough became President and CEO of RHNJ. Scarborough has an employment agreement with Rottlund, under which Scarborough's compensation is tied to the profits of RHNJ.

Shortly after RHNJ acquired the assets of Scarborough Homes, RHNJ sought legal assistance from Saul Ewing in connection with the acquisition of property in Middletown, Delaware known as the Springmill Property. Saul Ewing also assisted Scarborough in forming KSLG, a Delaware limited liability company that is wholly-owned by Kevin Scarborough.

### B. *Rottlund's Acquisition Of The Springmill Property And The Sale Of The Springmill Property To KSLG*

On October 15, 1998, RHNJ entered into a Purchase/Option Agreement for 167 acres constituting the Springmill Property. Under the Purchase/Option Agreement, title to the property was to be purchased in four installments of $732,000 each. This Agreement was amended several times, and the purchase price was later changed to five installments of $600,000 each.

In the Spring of 2000, RHNJ was scheduled to take down the first phase of the Springmill Property. According to Saul Ewing, Rottlund Company did not proceed with this first phase. Rather, Saul Ewing maintains that Rottlund instituted a plan by which it sought to remove from its balance sheet the debt represented by its subsidiaries including RHNJ. Saul Ewing contends that Rottlund and Scarborough

agreed that Scarborough would purchase the Springmill Property through Scarborough's company, KSLG, and then option the property back to RHNJ. On May 10, 2000, Scarborough advanced the funds to purchase the Springmill Property, and Scarborough signed the relevant documents on behalf of both RHNJ and KSLG.

### C. *Scarborough's Subsequent Actions Regarding The Springmill Property*

Following the purchase of the Springmill Property, Rottlund Company decided to go private and sell RHNJ to raise funds to finance that transaction. Saul Ewing maintains that John Sheridan, the president of RHNJ noticed that Scarborough's attitude toward Rottlund Company and its CEO, David Rotter, changed when he learned that RHNJ would be sold. According to Sheridan, Scarborough began to behave secretly with regard to his land dealings, showed a dislike for Rotter, and threatened to sell the Springmill Property. Sheridan was against the sale of the Springmill Property because it would diminish the assets of RHNJ, and Sheridan contacted Rotter to discuss Scarborough's conduct. Although Rottlund sought legal advice from a Delaware lawyer and a Minnesota lawyer, Saul Ewing maintains that Rottlund ultimately took no action with regard to the Springmill Property.

### D. *The Sale Of The Springmill Property To McKee Properties, Inc.*

In October 2000, Scarborough arranged for the sale of the Springmill Property to McKee Properties, Inc. Saul Ewing contends that Scarborough, acting on behalf of RHNJ, instructed it to complete the assignment of the rights in the Purchase/Option from RHNJ to Scarborough's entity KSLG. Following this transfer, Scarborough caused KSLG to sell those rights to McKee Properties for $9,018,860

plus some additional amounts spent by KSLG to construct a model home. After the closing and at Scarborough's direction, Saul Ewing wired $3 million to Rottlund Company as its share of the proceeds of the sale. Rottlund Company then objected to the sale and removed Scarborough from his position as CEO of RHNJ.

Saul Ewing maintains that from the outset, it communicated entirely with Scarborough as the sole representative of RHNJ, with the possible exception of some minor accounting matters involving Janet Crossley, another RHNJ employee. Saul Ewing further maintains that Rottlund knew that Scarborough intended to sell the Springmill Property, yet it took no action to prevent the sale or to inform Saul Ewing of its present claim that Scarborough acted without Rottlund's authorization in selling the Springmill Property.

### E. *The Litigation Between Rottlund And Scarborough*

After removing Scarborough from his CEO position and objecting to the sale of the Springmill Property, litigation ensued between Rottlund and Scarborough. Scarborough sued Rottlund for breach of his employment agreement, and Rottlund sued Scarborough for breach of contract, breach of fiduciary duty and breach of loyalty and fraud.

Within weeks of filing these lawsuits, Rottlund and Scarborough met with their respective attorneys and worked out a Settlement Agreement. Scarborough settled with Rottlund for $450,000 plus the transfer of some real estate to Scarborough. In connection with the settlement, Scarborough and Rottlund negotiated a Release. According to Michael Flom, Rottlund's attorney, Scarborough and Rottlund agreed that any release would preserve claims against insurers and attorneys. The Release reads as follows:

7. a. Except for obligations specifically created or preserved by this Agreement, Rottlund Homes of New Jersey, Inc., the Rottlund Company, Inc. and their Affiliates hereby release Kevin Scarborough, KSLG, LLC, their Affiliates and the officers, directors, members, partners, employees, agents, heirs, personal representatives, successors and assigns, of them and of their Affiliates, of and from any and all manner of actions and cause of action, suits, debts, dues, accounts, covenants, contracts, agreements, claims and demands whatsoever, specifically including, but not limited to all claims and counterclaims that were brought or might have been brought in the New Jersey Action and/or the Minnesota Action and/or arising from or relating to the Springmill real estate development in New Castle County, Delaware including without limitation the sale thereof, and/or the Employment Agreement ... whether known or unknown, liquidated or unliquidated, in contract, tort or otherwise, at law or in equity, that they, the releasing parties, have, at any time had, or that they, their heirs, personal representatives, successors or assigns can or may have against any of the released parties by reason of any act, cause matter or thing whatsoever (but not including the right to claim over if any such claims are brought by any third-party), occurring up to and including the date of this Agreement.

(Settlement Agreement ¶ 7(a)).

F. *The Instant Litigation*

Rottlund filed the instant action against Saul Ewing alleging professional negligence/legal malpractice, breach of fiduciary duty, negligent misrepresentation and nondisclosure, fraud and fraudulent concealment, and punitive damages. Rottlund contends that Saul Ewing failed to conduct an adequate conflicts search or to advise Rottlund that it represented multiple clients (Kevin Scarborough and KSLG) who possessed actual, adverse interests to Rottlund. Rottlund also alleges that Saul Ewing assisted Scarborough in secretly transferring the Springmill Property to KSLG and then to McKee without paying any consideration to Rottlund. Rottlund alleges that the fraudulent sale of its interest in the Springmill Property deprived it of the business opportunity to develop the property and make a profit on the over 362 lots comprising the Springmill Property, or in the alternative, that it was denied the profit it would have made had it sold the property directly.

In its Answer to the Complaint, Saul Ewing denies any wrongdoing. In addition, Saul Ewing asserts the affirmative defense that Rottlund's claims are barred by the terms of the Settlement Agreement. Saul Ewing also asserts a counterclaim against Rottlund. Specifically, Saul Ewing contends that, as an agent of Rottlund and an agent of KSLG, it is included in the Release between Rottlund and Scarborough. Thus, Saul Ewing contends that Rottlund maliciously and willfully breached the Release by filing this lawsuit against Saul Ewing.

**DISCUSSION**

**I. Rottlund's Motion For Partial Summary Judgment**

By its Motion For Partial Summary Judgment, Rottlund contends that Saul Ewing does not have standing to enforce the Settlement Agreement, because it is not a third-party beneficiary to the Agreement. Rottlund also contends that its claims are independent of any claims that it released against Scarborough and KSLG by the Settlement Agreement, because Saul Ewing owed Rottlund certain non-

delegable duties, including fiduciary duties and the duty of loyalty.[1] Thus, Rottlund contends that its Motion seeks to resolve two distinct issues: (1) whether Saul Ewing may assert a counterclaim against Rottlund for breach of the Settlement Agreement and recover damages under the remedy provision of the Settlement Agreement; and (2) whether Saul Ewing may assert the affirmative defense that Rottlund released any claims it had against Saul Ewing when it executed the Settlement Agreement.

In response, Saul Ewing contends that the terms of the release are clear, and that Saul Ewing, as an agent of KSLG, was released from any and all claims arising out of or related to the sale of the Springmill Properties. In the alternative, even if the language of the release is ambiguous, Saul Ewing contends that there are genuine issues of material fact precluding summary judgment in favor of Rottlund on Saul Ewing's Counterclaim. Specifically, Saul Ewing contends that Rottlund must prove that the parties agreed to preserve Rottlund's claims against Saul Ewing. Saul Ewing contends that there is a factual dispute over this issue, because Scarborough denies that he agreed to exclude Saul Ewing from the Release, while Flom's affidavit states the contrary.

### A. Standard of Review Under Federal Rule of Civil Procedure 56(c)

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In determining whether there is a triable dispute of material fact, a court must review all of the evidence and construe all inferences in the light most favorable to the non-moving party. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976). However, a court should not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000). Thus, to properly consider all of the evidence without making credibility determinations or weighing the evidence the "court should give credence to the evidence favoring the [non-movant] as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Id.* The moving party bears the burden of proving that no genuine issue of material fact is in dispute. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n. 10, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

To defeat a motion for summary judgment, Rule 56(c) requires the non-moving party to:

do more than simply show that there is some metaphysical doubt as to the mate-

---

1. In its Opening Brief In Support Of Their Motion For Partial Summary Judgment, Rottlund provides the Court with a choice of law analysis, in the event that Saul Ewing challenges the applicability of either New Jersey or Delaware law. It appears to the Court that Saul Ewing raises no such choice of law issue. Further, it appears to the Court that New Jersey and Delaware law would produce the same results in this case, and therefore, the Court declines to address the choice of law issue. *Williams v. Stone*, 109 F.3d 890, 893 (3d Cir.1997) (stating that the court should "avoid the choice-of-law question" where the laws of the two potentially applicable jurisdiction would produce the same result on a particular issue).

rial facts.... In the language of the Rule, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." ... Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is "no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Accordingly, a mere scintilla of evidence in support of the non-moving party is insufficient for a court to deny summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Rather, a genuine issue for trial exists only if the record taken as a whole could lead a rational person to conclude that the position of the person with the burden of proof on the disputed issue is correct. *Horowitz v. Federal Kemper Life Assurance Co.*, 57 F.3d 300, 302 n. 1 (3d Cir.1995) (citations omitted). Thus, if the non-moving party fails to make a sufficient showing on an essential element of his or her case to which he or she has the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

B. *Whether Saul Ewing Has Standing To Enforce The Settlement Agreement Against Rottlund*

As a general matter, only a party to a contract has standing to enforce a contract and sue for breach of that contract. *Verosol B.V. v. Hunter Douglas, Inc.*, 806 F.Supp. 582, 586 (E.D.Va.1992) (applying New Jersey law) (citing 2 Samuel Williston *A Treatise on the Law of Contracts* ("*Williston on Contracts*") § 347 (3d ed.1959)); *Insituform of North America, Inc. v. Chandler*, 534 A.2d 257, 270 (Del.Ch.1987) (holding that nonsigna-tories to a contract have no rights under the contract, and thus no standing to assert claims under the contract); *Madison Realty Partners 7, LLc v. Ag ISA, LLC*, 2001 WL 406268, *5 (Del.Ch. Apr.17, 2001). An exception to this principle is the doctrine of third-party beneficiary contracts. Under this doctrine, an individual who is not a party to a contract has standing to enforce the contract under certain circumstances. To qualify as a third-party beneficiary, the party seeking such status must establish that the contract was "made for the benefit of that third party within the intent and contemplation of the contracting parties." *Grand St. Artists v. Gen'l Electric. Co.*, 19 F.Supp.2d 242, 253 (D.N.J.1998) (citing *Grant v. Coca–Cola Bottling Co.*, 780 F.Supp. 246 (D.N.J. 1991)); *Pierce Associates, Inc. v. Nemours Foundation*, 865 F.2d 530, 535 (3d Cir. 1988) (applying Delaware law); *Browne v. Robb*, 583 A.2d 949, 954–955 (Del.1990) (requiring the contracting parties to intend to confer a benefit on the third party). The intent of the contracting parties is key in determining whether the third party is an intended beneficiary with standing to enforce the contract or whether the third party is merely an incidental beneficiary with no contractual standing. "Foreseeability of a prospective benefit to a third party is not enough to establish a third party's rights." *Grant*, 780 F.Supp. at 249. Rather, the benefit to the third party must have been "affirmatively sought," meaning that the benefit to the third party "must have been, to some extent, a motivating factor in the parties' decision to enter into the contract." *Grand St. Artists*, 19 F.Supp.2d at 253 (citations omitted). To determine whether the parties intended to make an individual a third-party beneficiary, the court must look to the terms of the contract and the surrounding circumstances. *Id.*

Saul Ewing maintains that its status as an agent of Scarborough and KSLG gives it standing to assert a Counterclaim against Rottlund for breach of the Settlement Agreement, because the Release expressly includes all agents of Scarborough and KSLG. However, Saul Ewing's status as Scarborough's agent is not dispositive. *Williston on Contracts* § 37:2. Saul Ewing must demonstrate that the parties entering into the contract intended Saul Ewing to be a third-party beneficiary of the promises contemplated by the contract.

After reviewing the terms of the Settlement Agreement in light of the surrounding circumstances, the Court concludes that Saul Ewing is not a third-party beneficiary to the Settlement Agreement, such that it has standing to independently assert a breach of the Settlement Agreement against Rottlund as a result of the instant litigation initiated by Rottlund. By the Release, Rottlund agreed to release Scarborough, KSLG, and their agents of and from any action, including actions arising from or relating to the Springmill real estate development. While it may be said that Saul Ewing is a third-party beneficiary of Rottlund's promise not to sue Saul Ewing as an agent of Scarborough and KSLG, that is not the issue in this case. In this case, Rottlund is suing Saul Ewing as its agent, for the breach of duties Saul Ewing owed to Rottlund as Rottlund's attorney.[2] Thus, Saul Ewing cannot be said to be a third-party beneficiary entitled to enforce the Settlement Agreement against Rottlund for purposes of the instant litigation.

Further, the Court observes that the Settlement Agreement expressly provides that the "[t]here are no third party beneficiaries intended by the parties to this Agreement." Settlement Agreement ¶ 8(e). Saul Ewing has offered no evidence to contradict the stated intent of the parties. Indeed, Saul Ewing has not demonstrated that the parties were motivated to enter into the Settlement Agreement for the benefit of releasing Saul Ewing from claims by Rottlund for acts arising in the scope of Saul Ewing's agency relationship with Rottlund. Because Saul Ewing cannot enforce the Settlement Agreement against Rottlund in these circumstances, the Court concludes that Rottlund is entitled to partial summary judgment on Saul Ewing's Counterclaims.

C. *Whether Saul Ewing Can Assert The Release As An Affirmative Defense Against Rottlund For Rottlund's Claims In This Lawsuit*

As discussed in the context of Rottlund's third-party beneficiary argument, the Release in this case pertains to Saul Ewing as the agent of Scarborough and KSLG. However, Saul Ewing does not dispute, that it was also Rottlund's legal counsel. As Rottlund's legal counsel, Saul Ewing directly owed Rottlund certain fiduciary duties. Because these fiduciary duties were owed to Rottlund in Saul Ewing's capacity as Rottlund's agent, and not in its capacity as Scarborough and KSLG's agent, Rottlund's claims against Saul Ewing for breach of those duties do not fall within the scope of the Release.

The United States District Court for the Northern District of Georgia addressed a similar issue in *Horizon Financial, F.A. v. Hansen,* 791 F.Supp. 1561 (N.D.Ga.1992). In *Horizon,* the attorneys represented borrower defendants (the "borrowers") who had been dismissed from an action involving certain loan transactions. Prior to closing each loan agreement, the attorneys for the borrowers provided Horizon with an opinion letter about the transac-

---

2. See Section I.C. *infra* of this Opinion.

tion. A dispute arose between Horizon and the borrowers concerning the loan transactions. Horizon and the borrowers entered into a Mutual Release Agreement to resolve their dispute, but the attorneys were not a signatory to the release. *Id.* at 1564. The release defined the "BORROWER RELEASED PARTIES" to include the borrowers, and their agents. *Id.* at 1569.

Horizon also discovered that the attorneys drafted documents for various undisclosed transactions related to properties purchased with proceeds from the Horizon loans. These transactions impaired Horizon's security interests in the properties. As a result, Horizon also brought suit against the borrower's attorneys alleging that they made numerous misrepresentations in their opinion letters and participated in the laundering and diversion of loan proceeds, unauthorized loans and the unauthorized issuance of stock. The attorneys moved for summary judgment on the grounds that the release entered into between Horizon and the borrowers precluded Horizon's claim for damages. Reviewing the release, the court concluded that the attorneys were "agents" of the borrowers within the scope of the settlement agreement, but that the settlement agreement only released claims within the scope of their relationship with the borrowers. Specifically, the court found that the release "does not absolve [the attorneys] from liability for actions taken beyond the scope of their agency relationship with the settling [borrower] defendants." *Id.* at 1573. Stated another way, Horizon's claims against the attorneys were not based on the breach of a duty the attorneys owed to the settling defendants, but rather "on an independent duty to [Horizon] based on [the attorneys'] manifest awareness of [Horizon's] reliance on the opinion and intention that [Horizon] so rely." *Id.* at 1573. Because an independent duty ran from the attorneys to Horizon, the court concluded that the release had no bearing on the claims asserted by Horizon against the attorneys.

As in *Horizon*, in this case, an independent duty ran from Saul Ewing to Rottlund as a result of the attorney-client relationship between Saul Ewing and Rottlund. When it entered into the Settlement Agreement with Scarborough and KSLG, Rottlund did not release its agents or attorneys from claims related to their breach of the independent fiduciary duties they owed to Rottlund. As such, the Release in this case has no bearing on the claims asserted by Rottlund against Saul Ewing, and therefore, the Court concludes that Saul Ewing cannot maintain its affirmative defense based on the Release. Accordingly, the Court will grant partial summary judgment in favor of Rottlund and strike Saul Ewing's affirmative defense based on the Release.

## II. Scarborough And KSLG's Motion To Dismiss Saul Ewing's Third–Party Complaint

By its Motion, Scarborough and KSLG request the Court to dismiss the Third–Party Complaint filed against it by Saul Ewing. By its Third–Party Complaint, Saul Ewing seeks contribution and/or indemnification from Scarborough and KSLG in the event that Saul Ewing is found to be liable to Rottlund. In its Complaint against Saul Ewing, Rottlund sets forth five claims: (1) professional negligence and legal malpractice based on Saul Ewing's alleged (a) breach of its duty of loyalty to Rottlund, (b) breach of its duty of trust owed to Rottlund, (c) breach of its duty to act in Rottlund's best interest, (d) breach of its duty to communicate to Rottlund in a timely and reasonable manner, (e) breach of its duty to give reasonable legal advice to Rottlund, and (f)

acceptance of an engagement with a client despite the existence of a conflict of interest; (2) breach of fiduciary duty; (3) negligent misrepresentation and nondisclosure based on Saul Ewing's alleged failure to provide truthful information regarding Rottlund's business transactions; (4) fraud and fraudulent concealment; and (5) punitive damages.

In its Third–Party Complaint, Saul Ewing bases its claims for indemnification and/or contribution on Scarborough and KSLG's alleged misrepresentation to Saul Ewing regarding the scope of its agency relationship with Rottlund. Saul Ewing contends that Scarborough and KSLG failed to disclose material facts such that Saul Ewing could not determine if it was presented with the representation of adverse interests. In addition, Saul Ewing contends that Scarborough and KSLG breached their duties of good faith and fair dealing by representing that they had the authority to act on behalf of RHNJ, if they were not so authorized.

In seeking to dismiss Saul Ewing's Third–Party Complaint, Scarborough and KSLG contend that (1) a non-lawyer may not be jointly liable with a lawyer for malpractice; (2) joint tortfeasors committing intentional torts may not claim contribution or indemnification; and (3) the Release bars the third-party claims against Scarborough and KSLG. For purposes of this Motion, the parties appear to agree that New Jersey law governs, and therefore, the Court will apply the principles of New Jersey law in resolving the issues related to the Third–Party Complaint.

### A. Standard of Review Under Federal Rule of Civil Procedure 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint for failure to state a claim upon which relief may be granted. Fed.R.Civ.P.

12(b)(6). The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir.1993). When considering a motion to dismiss, a court must accept as true all allegations in the complaint and must draw all reasonable factual inferences in the light most favorable to the plaintiff. *Neitzke v. Williams*, 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255 (3d Cir. 1994). The Court is "not required to accept legal conclusions either alleged or inferred from the pleaded facts." *Kost*, 1 F.3d at 183. Dismissal is only appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The burden of demonstrating that the plaintiff has failed to state a claim upon which relief may be granted rests on the movant. *Young v. West Coast Industrial Relations Assoc., Inc.*, 763 F.Supp. 64, 67 (D.Del. 1991) (citations omitted).

### B. Saul Ewing's Claims For Contribution Against Scarborough And KSLG

The right to contribution under New Jersey Law is governed by the New Jersey Joint Tortfeasor Contribution Act. In relevant part, the Joint Tortfeasor Contribution Act provides:

Where injury or damage is suffered by any person as a result of the wrongful act, neglect or default of joint tortfeasors, and the person so suffering injury or damage recovers a money judgment or judgments for such injury or damage against one or more of the joint tortfeasors whether in whole or in part, he shall be entitled to recover contribution

from the other joint tortfeasor or joint tortfeasors for the excess so paid over his pro rata share; but no person shall be entitled to recover contribution under this act from any person so entitled to be indemnified by him in respect to the liability for which contribution is sought.

N.J. Stat. Ann. § 2A:53A–3 (2002).

■■■ Although the Joint Tortfeasor Contribution law is silent with regard to the effect of a release on the right of contribution, New Jersey courts have examined this issue at length. Under New Jersey law, the prerequisites for contribution are: (1) an entry of a judgment or verdict; (2) a determination of plaintiff's quantum of damages; and (3) the existence of nonsettling defendants. It is well-recognized that "[o]nce a defendant settles with [the] plaintiff on the affirmative claims and is released by [the] plaintiff, there is neither necessity nor requirement for further participation in the proceedings on account of claims for contribution." *Tefft v. Tefft*, 192 N.J.Super. 561, 471 A.2d 790, 796 (1983). Stated another way, a plaintiff's settlement with a joint tortfeasor extinguishes the nonsettling tortfeasor's right to claim contribution under New Jersey law. *Theobald v. Angelos*, 44 N.J. 228, 208 A.2d 129, 131 (N.J.1965); *Nilson v. Moskal*, 70 N.J.Super. 389, 175 A.2d 504, 506 (N.J.Super. Ct. Law Div.1961).

■■ In this case, Scarborough and KSLG have settled with Rottlund. Thus, even if Scarborough and KSLG are considered joint tortfeasors with Saul Ewing (and there has been no such finding to this effect at this stage of the litigation), Saul Ewing has no right to proceed against Scarborough and KSLG for contribution.[3] Accordingly, the Court concludes that Saul Ewing cannot state a claim for contribution against Scarborough and KSLG in the event that Saul Ewing is found liable to Rottlund, and therefore, the Court will grant Scarborough and KSLG's Motion To Dismiss the Third–Party Complaint to the extent that it seeks contribution.[4]

C. *Saul Ewing's Claims For Indemnification Against Scarborough And KSLG*

■■ With regard to claims for indemnification, the New Jersey courts have adopted the general rule set forth in Restatement, Restitution § 96 (1937):

A person who, without personal fault, has become subject to tort liability for the unauthorized and wrongful conduct of another, is entitled to indemnity from the other for expenditures properly made in the discharge of such liability.

■■ Thus, a party seeking common law indemnification from another must be without fault. *Cartel Capital Corp. v. Fi-*

---

**3.** In the event that Saul Ewing is found liable to Rottlund, Saul Ewing may have the right to have its liability reduced by the pro rata share of Scarborough's fault, if Scarborough is found to be a joint tortfeasor with Saul Ewing. However, these issues are not relevant to the pending Motion To Dismiss, and therefore, the Court declines to address them further.

**4.** The parties divide Rottlund's claims against Saul Ewing into two categories: (1) negligence claims, and (2) intentional tort claims. Scarborough and KSLG suggest that Saul Ewing's contribution claim is barred if Saul

Ewing is found liable to Rottlund for intentional torts. Whether the liability is for negligence or intentional torts is not dispositive, because in New Jersey, intentional tortfeasors can seek contribution from negligent tortfeasors. *Blazovic v. Andrich*, 124 N.J. 90, 590 A.2d 222, 230 (1991). Thus, the Court's analysis under the Joint Tortfeasor Contribution Act applies regardless of whether Saul Ewing's liability to Rottlund is determined to be for negligence or intentional torts, and the bottom line is the same, i.e. Saul Ewing cannot maintain a claim for contribution against Scarborough and KSLG.

*reco of New Jersey,* 81 N.J. 548, 410 A.2d 674, 683 (N.J.1980) (citing *Adler's Quality Bakery, Inc. v. Gaseteria,* 32 N.J. 55, 159 A.2d 97 (1960)). Under the common law, fault includes one's own negligence, such that a person who is "actively negligent" is not entitled to indemnification. *Tryanowski v. Lodi Bd. of Ed.,* 274 N.J.Super. 265, 643 A.2d 1057, 1061–1062 (N.J.Super.1994). New Jersey law recognizes an exception to the general rule in that "one who in good faith and at the direction of another commits a tort is allowed indemnity against the person who caused him to act." *Ramos v. Browning Ferris Industries of South Jersey, Inc.,* 103 N.J. 177, 510 A.2d 1152, 1158 (N.J.1986).

In this case, Saul Ewing maintains that any breach of its duties to Rottlund was caused by its reasonable reliance on misstatements of material fact made by Scarborough and KSLG. Whether Saul Ewing bears any fault with respect to Rottlund or whether Saul Ewing's claim against Scarborough and KSLG falls into the exception to the general rule of the Restatement has not yet been determined. Thus, it is unclear at this stage whether Saul Ewing can ultimately maintain its claim for indemnification against Scarborough and KSLG.

■ However, on a motion to dismiss, the Court must accept the factual allegations of the Third–Party Complaint as true and determine whether the third-party plaintiff, Saul Ewing, has stated a claim upon which relief may be granted. Accepting the allegations of the Third–Party Complaint as true, the Court concludes that Saul Ewing has stated a claim for indemnification against Scarborough and KSLG based on Scarborough and KSLG's alleged misrepresentations of material fact. However, for purposes of the instant litigation, the Court is of the view that the indemnification claim stated in the Third–Party Complaint should be stayed pending the outcome of the litigation between Rottlund and Saul Ewing. Accordingly, the Court will deny Scarborough and KSLG's Motion To Dismiss the Third–Party Complaint to the extent that it states a claim for indemnification and stay Saul Ewing's third-party indemnification claim pending the outcome of the litigation between Rottlund and Saul Ewing.

## CONCLUSION

For the reasons discussed, Rottlund's Motion For Partial Summary Judgment dismissing Saul Ewing's Counterclaim and striking its affirmative defense based on the Release will be granted. In addition, Scarborough and KSLG's Third–Party Motion To Dismiss will be granted in part and denied in part. The Third–Party Complaint will be dismissed to the extent that Saul Ewing seeks contribution from Scarborough and KSLG. To the extent that Saul Ewing seeks indemnification from Scarborough and KSLG, the Court will stay Saul Ewing's claim pending the outcome of the litigation between Rottlund and Saul Ewing.

An appropriate Order will be entered.

## *ORDER*

At Wilmington, this 30th day of January 2003, for the reasons set forth in the Opinion issued this date;

IT IS HEREBY ORDERED that:

1. The Motion For Partial Summary Judgment (D.I.126) filed by Plaintiffs Rottlund Homes of New Jersey, Inc. and Rottlund Company, Inc. seeking to dismiss Saul, Ewing, Remick & Saul, L.L.P.'s Counterclaim and strike its affirmative defense based on the Release is GRANTED.

2. The Motion To Dismiss (D.I.84) filed by Third–Party Defendants Kevin Scarborough and KSLG, LLC is GRANTED IN PART AND DENIED IN PART.

Third–Party Plaintiff Saul, Ewing, Remick & Saul L.L.P's claim for contribution is DISMISSED and its claim for indemnification is STAYED pending the outcome of the litigation between Plaintiffs, Rottlund Homes of New Jersey, Inc. and Rottlund Company, and Defendant Saul, Ewing, Remick & Saul, L.L.P.